# Myers et al., Commissioners, *versus* Commonwealth for use of Zook et al.

1. It is the duty of the County Commissioners, under the Act of May 5th, 1876 (P. L., 112) to rebuild a bridge, the road leading to and from which is a turnpike, when the same has accidentally been destroyed; and, on their failure to do so, the court will, upon petition, compel them by peremptory mandamus.

2. The said Act of May 5th, 1876 is a general Act and repealed all Acts or parts of Acts inconsistent therewith, hence the Acts of February 27th, 1847 (P. L. 170), May 21st, 1857 (P. L. 653), and May 1st, 1861 (P. L. 488), relating to Lancaster county, authorizing the Commissioners to obtain subscriptions for part of the cost, requiring the townships wherein the bridge is situated to pay one third of the cost of rebuilding, and enacting that bridges on turnpike roads are to be kept in repair by the turnpike companies, are no longer applicable.

3. It is too late to object that proceedings of a jury in reporting favorably

upon the rebuilding of a bridge were irregular, after the report has been confirmed by the court and the bridge rebuilt.

4. The purpose of the Act of May 5th, 1876, relative to the reconstruction of county bridges is sufficiently expressed in its title.

May 21st, 1885. Before MERCUR, C. J., GORDON, TRUNKEY, GREEN and CLARK, JJ. PAXSON and STERRETT, JJ., absent.

ERROR to the Court of Common Pleas of *Lancaster county :* Of January Term 1885, No. 456.

This was a petition filed by Jacob K. Zook, H. P. Krick, D. Killinger, Joseph Stark, George W. Styer and Howard Piersol, setting forth that the bridge viewers had reported that a bridge across the Big Conestoga Creek was necessary to take the place of one that had been destroyed, that the commissioners of Lancaster county had refused to rebuild and reconstruct said bridge, and praying that a mandamus issue against said commissioners commanding them to rebuild said bridge.

The commissioners filed an answer to this petition and subsequently counsel agreed upon the following case stated to be submitted to the court, in the nature of a special verdict:—

I. Christian Binkley being seised prior to the year 1801 and possessed of three several tracts of land, one whereof is situated in the township of Manheim and the other two in the township of East Lampeter, in the county of Lancaster, (the river Conestoga dividing at said point the said two townships and also the said tracts of land), erected a stone bridge of ten arches across said river Conestoga where said river divides said townships on the above mentioned lands; which said bridge was erected across said Conestoga river at or near a point where the two public roads—one running from Salunga through Neffsville and across the Conestoga to Strasburg, and the other from Lancaster city (then a borough) to New Holland—crossed the said Conestoga.

II. That the said Christian Binkley and wife, on the 18th day of June A. D. 1801, for a valuable consideration did grant and confirm unto Martin Myers and others, the said bridge and the land whereon the same is built as also one perch wide around the heads thereof, etc., and to their survivor or survivors of them: To hold the same in trust, nevertheless to and for the public use and benefit of the said county of Lancaster, and the inhabitants thereof, and free for all persons to pass, repass and travel in, over, across, along and upon the said bridge of ten arches and the ground, piece or parcel of land whereon the same is built, forever.

III. That the Governor of the Commonwealth of Pennsyl-

[Myers v. Commonwealth.]

vania, by virtue of the power and authority given him by an Act, which said Act is made part of this case stated, entitled, An Act to enable the governor to incorporate a company to make an artificial road from the Blue Ball tavern, on the Downingtown, Ephrata and Harrisburg turnpike, through New Holland and to Binkley's Bridge, and thence to the borough of Lancaster, approved March 20th, A. D., 1810, issued letters patent under his hand and the seal of the state, whereby certain persons named in said letters patent and their successors, were created a body politic in deed and in law, under the name, style and title of "The President, Managers and Company of the New Holland Turnpike Road," (now known as the New Holland Turnpike Co). The said body politic to have full power and authority to survey, lay down and ascertain, mark and fix such route as they, the president and managers shall deem expedient, beginning at Blue Ball tavern, on the Downingtown, Ephrata and Harrisburg turnpike through New Holland to Binkley's bridge, from thence to the borough of Lancaster.

IV. That the said president and managers as aforesaid did complete said turnpike road and have used it from the year 1810, or thereabouts, and still use it as a turnpike road, charging toll thereon.

V. That since the completion of said turnpike, the said bridge, being situate on the route or line thereof, was used by said company and by the public as set forth in paragraph X. of this case stated, and while being thus used, in the year 1867 was destroyed by flood and freshet and fell to pieces, whereby the travel on said turnpike road and the Strasburg, Neffsville and Salunga roads was impeded.

VI. That on the 19th day of August, A. D., 1867, divers citizens of Lancaster county presented their petition to the court of Quarter Sessions of said county, setting forth, That a bridge is much wanted over Conestoga creek at the place where the public highways known as the Strasburg, Neffsville, and Salunga road and also the road from New Holland to Lancaster, cross the said creek, etc., the creek at that point dividing the townships of Manheim and East Lampeter; and praying the said court to appoint proper persons to view the premises and to take such order on the subject as is required, etc., That viewers were appointed as prayed for, and their report favoring the building of a bridge was referred to the grand jury at November Sessions, A. D. 1867, and disapproved by that body. That the same report without any further proceedings was subsequently presented to the grand jury at the January Sessions, A. D, 1868, and was then approved by that body and the report was confirmed by the court.

VII. That subsequent to the confirmation aforesaid, the commissioners of Lancaster county agreed to rebuild the said bridge, provided the New Holland Turnpike Road Co. would pay the one third part of the cost of said building. That the said Turnpike Road Co. agreed to pay one third of the cost of rebuilding.

VIII. That the county commissioners invited proposals for the erection of the said bridge and awarded the contract to Elias McMellen for the price or sum of sixteen thousand five hundred dollars, ($16,500). That the New Holland Turnpike Co. paid the one third of said sum of $16,500, and paid said sum to the commissioners of Lancaster county for the use of said county.

IX. That the bridge so erected was destroyed by fire on the 25th day of November, A. D. 1882, the stone piers and abutments being left standing, and the stream cannot be forded at the point by reason of great embankments.

X. That the said New Holland Turnpike Co. by virtue of its charter, has exclusive ownership and control of the said turnpike from the Blue Ball tavern, on the Ephrata and Harrisburg turnpike to the said bridge and from thence to the city of Lancaster; and the said bridge could not be reached except by passing over the said turnpike. That the ends rested upon the road bed of said turnpike company's road, and the public, in crossing the said bridge, were compelled to comply with the conditions which the turnpike company have a right under the law to impose, to wit: the payment of toll where they collect the same.

XI. That the records of the said bridge, its building, destruction, erection, etc., in the office of the Clerk of Quarter Sessions and in the office of commissioners of Lancaster county, are hereby made part of this case stated. That since the destruction of said bridge in 1882, there has been no proceeding instituted in the court of Quarter Sessions of Lancaster county, for the erection or reconstruction of the same, and no petition for the appointment of viewers for the said purpose. Also rules of court concerning roads and bridges. Acts of Assembly and supplements thereto:

P. L. 1824, page 35., Supplement to the Act approved March 20th, 1810: An Act to revive and continue in force certain Acts incorporating certain turnpike roads.

P. L. 1847, page 170. Approved February 27th, 1847: An Act relative to bridges in Lancaster county.

P. L. 1856, page 164. Supplement approved March 20th, 1810: An Act to enable the Governor to incorporate a company to make an artificial road from Blue Ball tavern, on the Downingtown, Ephrata and Harrisburg Turnpike, through

New Holland, to Binkley's Bridge, from thence to the borough of Lancaster.

P. L. 1857, page 653. Approved May 21st, 1857: An Act relative to bridges in Lancaster county.

P. L. 1861, page 488. Approved May 1st, 1861: An Act relative to bridges in Lancaster county.

P. L. 1862, page 154. Approved March 21st, 1862: Supplement to an Act incorporating the New Holland Turnpike Road Company.

And all other Acts relating to this question.

XII. That the County Commissioners contracted in 1877 with James C. Carpenter for certain repairs to be made on the said bridge, and on the 2d day of October, 1877, the said Turnpike Company paid to the Commissioners of Lancaster county the sum of $116.67—the one third cost of the repairs. And on the 7th day of January, 1878, the said Turnpike Company paid the sum of $95.18, the one third of the cost of certain repairs, also made by the direction of the Commissioners of Lancaster county. That the usual notice was placed upon and against the said bridge to regulate fast driving, etc.,—"By order of the Commissioners of Lancaster county."

XIII. If on this statement of facts the court are of the opinion that the Commissioners of Lancaster county are compelled to rebuild said Binkley's Bridge at the expense of the county of Lancaster, without the exercise of any discretion and without any preliminary proceedings in court or view, then judgment to be entered for the plaintiffs.

But if the court should be of the opinion that the County Commissioners are not so compellable to rebuild or reconstruct the said bridge, then judgment for the defendant. Either party to be entitled to take out a writ of error to the Supreme Court.

The draft (see p. 222) of the premises is also made a part of the record of this case stated, the same showing the position of the bridge, the New Holland Turnpike road and the public roads, both at the time of the erection of the bridge in 1868, and at the time of its destruction in 1882.

Draft to represent the distance from the point where the public road from Neffsville intersects with the New Holland Turnpike, to the point where the Strasburg and Bird-in-Hand road intersects with the same. Distance from Neffsville road to edge of abutment of bridge, 488.4 feet. From abutment on west side of Conestoga creek to abutment on east side, 294 feet. From abutment to Strasburg road, 52.8 feet. Total distance between said roads, 835.2 feet.

Survey taken by                                A. C. ILYUS, J. P.
*April* 19*th*, 1884.

[Myers *v*, Commonwealth.]

The court, PATTERSON, J. entered judgment on the case stated for the plaintiffs and awarded a peremptory mandamus against the Commissioners commanding them to rebuild said bridge. Defendants thereupon took this writ assigning for error this action of the court.

*George Nauman* and *Marriott Brosius* (*John H. Fry* with them), for plaintiffs in error.

*B. Frank Eshleman* and *Samuel H. Reynolds (Andrew M. Frantz* with them), for defendants in error.

Chief Justice MERCUR delivered the opinion of the court October 5th, 1885.

On a case stated, this judgment of the court awarded a peremptory mandamus commanding the commissioners of the county of Lancaster to rebuild a bridge across the Conestoga creek in said county.

In 1797–8 one Binkley owned the land on both sides of the creek, and erected a bridge across the stream. In 1801 he sold and conveyed unto Myers and others, the bridge and the land on which it was built, and "one perch wide around the heads thereof" in trust for the public use and benefit of said county of Lancaster and the inhabitants thereof, and free for all persons to pass and travel over, across and upon said bridge and the ground or parcel of land whereon it was built, forever. The county accepted the bridge, repaired and maintained it, until it was destroyed by a flood in 1867. It was rebuilt in the following year. In November, 1882, the superstructure of the bridge was destroyed by fire leaving the stone piers and abutments still standing. The condition of the stream is such as to unquestionably require a bridge across it. The contention is whether it is the duty of the county commissioners to reconstruct or rebuild the same. The denial of that duty is based mainly on the alleged improper action of the authorities in adopting it as a county bridge and rebuilding it after its destruction by water. It appears that in 1810 the New Holland Turnpike Road Company was incorporated and constructed a turnpike which leads to and from said bridge, and the turnpike continues to be used as such and toll charged thereon.

Soon after the destruction of the bridge in 1867, on petition of citizens of said county the Court of Quarter Sessions appointed viewers who reported in favor of rebuilding the bridge. The report was submitted to the grand jury at the November sessions and by that body disapproved. At the first session thereafter the report was again laid before the grand jury and by it approved, and the report was confirmed by the court. The commissioners of the county ratified the same and agreed to rebuild, and did rebuild, on the payment to them of one third the cost thereof by the Turnpike company.

Thus all the forms of law prescribed by statute, to constitute a county bridge, were complied with. It is claimed by plaintiffs in error that the whole proceeding is invalid inasmuch as the report was laid before a subsequent grand jury after it had been disapproved by a former one. The case of Pequea Creek bridge, 18 P. F. S., 427, is cited to support this

conclusion. We do not question the correctness of that opinion on the facts of the case. There objection was made to submitting the same report to a second grand jury before it was done. It is an irregularity which may very well not be approved of if objection be made in time. Here, however, it was not only laid before the second jury without any objection but the action of that jury was ratified and confirmed by the court and the commissioners of the county. During the whole fourteen years that the superstructure stood the bridge was known and recognized as a county bridge. The decree making it such has never been reversed, set aside or in any manner annulled. It remains in full force down to the present time. The irregularity was waived by all of the tribunals authorized to pass upon the proceeding. The correctness thereof has been affirmed and ratified by so many years of recognized assent that it is now too late to successfully question its validity, in this proceeding. We must therefore hold and declare as we now do, that it became a county bridge subject to all the laws of that county applicable to such bridges. If this be so, it is further contended that the duty of rebuilding the same does not rest on the county of Lancaster by reason of the special statutes applicable thereto. To support that view the three following Acts are cited to wit: Of 27th February, 1847; 21st May, 1857, and 1st of May, 1861. The first of these provides, when any new bridge is then or thereafter authorized to be built according to law in that county, that the commissioners may, before proceeding to erect the same, cause a certain amount to be contributed by subscription of individuals and others. The one of 21st May, 1857, provides that all bridges which have been or shall be erected or purchased at the expense in part, or in the whole, of said county, and which are or shall be situate on the route of any turnpike road, and be used by the company owning such turnpike road, shall be kept in repair by the turnpike company, and in case of its failure so to do, the same shall be repaired by the commissioners of the county, and they may recover the cost thereof from such turnpike company. The other of 1st May, 1861, is supplementary to the Act of 27th February, and declares, in addition to the individual subscriptions authorized in the former Act, and which they may still require if they deem it right and proper, the commissioners may, before proceeding to erect the same, require from the township or townships in which the bridge is to be built, the payment of one-third of the cost thereof.

It will be observed that the first of these Acts expressly refers to the building of a "new bridge," and the Act supplementary thereto does not enlarge its application to any other

bridge, nor in any manner refer to the case of *rebuilding*, and both leave to the sound discretion of the commissioners whether to obtain aid from individuals or townships, before erecting the bridge; and the second Act applies to "repairs" only.

Whatever may have been the purpose or effect of any one of these Acts, the clear and unmistakable language of the Act of 5th of May, 1876, Pur. Dig. 1508, pl., 90, appears to cover all cases of *rebuilding*. It declares "it shall be the duty of the county commissioners of the several counties of this Commonwealth, to re-build and re-construct all bridges heretofore built or that may hereafter be erected by the county commissioners of any of the counties of this Commonwealth, whether the same has been or shall be constructed under the general laws of this Commonwealth relating to roads and bridges or any special Act of assembly for that purpose, whenever any such bridge has been, or shall hereafter be, blown down, destroyed, partially destroyed or swept away by floods, freshets, ice, storm, fire or other casualty, at the expense of the county wherein such bridge was located; and it shall be the duty of the county commissioners of the respective counties to pay the expenses of rebuilding any such bridge out of the county treasury in the usual manner."

Language more clear and specific than this could not be used. Obligation is thereby imposed on the county "to re-build and re-construct." What? The statute answers, "all bridges." How must they have been constructed? "Either under general or special laws," says the Act. In what manner must they have been either wholly or partially destroyed? The answer is by any casualty whatever. Where does this Act apply? It answers in any of the several counties of this Commonwealth. It was designed to strike down all laws in conflict therewith. To remove all doubt, sect. 3 declares "all Acts or part of Acts inconsistent herewith are hereby repealed." Hence the repeal of every or any special law in the county of Lancaster, inconsistent with this general law, does not rest on implication or presumption alone, but on its express command.

We see no merit in the argument as to the insufficiency of the title to this Act. It authorizes "the reconstruction of county bridges destroyed or partially destroyed, and empowers the commissioners to borrow money for that purpose." The purpose of the Act is sufficiently expressed in the title, and the authority to borrow money is germane to the reconstruction. It is unnecessary to discuss the question further. The learned judge committed no error in the judgment or decree entered.                         Judgment affirmed.