# Commonwealth, *ex rel.* Snyder *et al.*, *versus* Mitchell *et al.*

1. The word "responsible" in the 6th sect., of the Act of 23d of May 1874 has a broader meaning than is involved in the pecuniary ability to make a good contract by security for its faithful performance, and where the term is applied to contracts, requiring for their execution, not only pecuniary ability, but also judgment and skill, the statute imposes not merely a ministerial duty upon the city authorities, but also duties and powers which are deliberative and discretionary, and therefore, where these authorities have exercised a discretion, mandamus will not lie to compel them to modify their decision, even though their action was erroneous, in the absence of clear proof of fraud or bad faith.

2. One who sues for the writ of mandamus must have some well-defined right to enforce, which is specific, complete and legal, and for which there is no other specific legal remedy, and the right which he claims must be independent of that which he holds in common with the public at large ; and where a party made a bid for certain municipal work, under the provisions of the 6th sect. of the Act of 23d of May 1874, and his bid, although the lowest, was refused, mandamus would not lie to compel the city authorities to award the contract to him.

October 2d 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas, No. 1, *Allegheny county :* No. 192, of October and November Term 1876.

This was an application by the Commonwealth, *ex rel.* N. Snyder, Frank Havelock, Michael Ryan and John A. Jacobs, partners, doing business under the firm name of N. Snyder & Co., for a writ of mandamus to compel the water committee of the councils of the city of Pittsburgh and the councils of said city to award to said N. Snyder & Co., the contract for manufacturing, delivering and completing the "wrought-iron forcing mains" for the water-works of the city, the relators alleging that they had made the lowest bid for the contract and that it had improperly and illegally been awarded to higher bidders.

In their petition the relators represented in substance : That they

[Commonwealth *v.* Mitchell.]

were citizens and property owners of the city of Pittsburgh; that the water committee of councils having in charge the construction of water-works, in pursuance of the provisions of the 6th sect. of the Act of 23d of May 1874, Pamph. L. 230, invited sealed proposals for "wrought-iron forcing mains" conformably to certain specifications and plans; that the relators being expert and responsible "iron workers," competent and able to execute the contract, made proposals in good faith and in conformity with all requirements, for these "wrought-iron forcing mains," which proposals were $5000 lower than any other bid made, and that their bid was accompanied with a good and sufficient bond with two responsible persons as security; that it was the duty of said water committee and of councils to award to the petitioners the contract, they being the lowest responsible bidders, but that they have unjustly and illegally declared their intention of awarding the same to other and higher bidders, to wit, the firm of Jared M. Brush & Co., who are no more responsible than petitioners; and having no adequate or specific legal remedy except the writ of mandamus, the petitioners therefore pray that a writ of mandamus may issue commanding the water committee and councils not to award the contract to any individuals or firm whose bid is higher than that of petitioners, and to award the contract to the lowest responsible bidders, the petitioners, who are such conformably to the plans and under the regulations prescribed for the execution of the contract, or that a rule upon the water committee and councils may be granted, requiring them to show cause why a writ of mandamus should not be issued for the purposes aforesaid, &c.

The court granted the rule to show cause, and the mayor of the city of Pittsburgh, the chairman of the water committee, Thomas S. Mitchell, and the presidents of select and common councils, filed an answer, in which they admitted the facts set forth by petitioners, but denied the responsibility and competency of the firm of Snyder & Co.; the 4th and 5th paragraphs of the answer being as follows:—

"4. It is denied that the water committee were bound to award the contract to the petitioners, for the reason that they were not the lowest responsible bidders; and it is denied that they are responsible bidders, for the following reasons, viz. :—

"That it was within the knowledge and the full belief of said committee, that N. Snyder & Co., by some means or other, attempted and did perpetrate a gross deceit and wrong upon said committee, in surreptitiously departing from the specifications for a certain contract for the construction of boilers for the new water-works, by striking therefrom, without the knowledge or consent of said committee, the words 'mud drums,' whereby said committee have suffered considerable vexation and annoyance, and whereby the said city will, in all probability, be compelled to litigate with the said N. Snyder & Co., resulting in considerable loss to the city;

[Commonwealth v. Mitchell.]

that it was within the knowledge of some, if not all of the members of the water committee, that N. Snyder, the senior member of said firm of N. Snyder & Co., was a man of intemperate habits, whose character for sobriety was not .such as would warrant the committee in giving said firm such a responsible contract; that said N. Snyder also had attempted to bribe the mechanical engineer of the water-works, who was, by virtue of his office, the inspecting officer of said contract; and that N. Snyder & Co. were otherwise disqualified for the proper fulfilment of the requirements of the proposed contract.

" 5. That it is true that the water committee did refuse, and still do refuse, to award the said contract to N. Snyder & Co.; and it is averred that the said committee, acting under the discretion given to them as well by said ordinance as by the provisions of the 6th section of an Act of Assembly regulating the powers and classifying the several cities of the Commonwealth, approved May 23d 1874, and which was reserved, under said regulations to reject any and all bids, after due deliberation and careful consideration of the said several proposals, as well the bonds of the said parties as of all other requirements which go to make a skilful, reliable, trustworthy and responsible contractor, rejected the bid of said N. Snyder & Co., and awarded the contract to J. M. Brush & Co., as being, in the judgment of the committee, the lowest, best and most responsible bidders; that it is true that the select and common councils of said city did approve the said contract entered into by the water committee .thereof, with J. M. Brush & Co., as they were and are still advised and believe, that they acted and are still acting strictly in accordance with the law in such case made and provided. It is denied that any wrong or injury whatever has been done to the said N. Snyder & Co. by the said defendants."

The relators joined issue on the facts alleged in this answer, and the court appointed a commissioner to take testimony. His report having been filed, by agreement of counsel the cause was submitted to the court below, under the 27th section, 5th article of the Constitution and the Act of Assembly of April 22d 1874, passed in accordance therewith, entitled "An Act to provide for the submission of civil causes to the decision of the court, and to dispense with trial by jury," with right to writ of error, &c.

The court (Stowe A. L. J.), in an opinion filed, found that the facts set forth in the petition were true, and continued: "But recurring to the second question, which was the great ground of controversy under the evidence, and upon argument, we find it is not denied, and very clearly proven, that plaintiffs were the lowest bidders; and we are of opinion that, in a mere pecuniary sense, they were ' responsible;' and we are further of opinion that the evidence does not sustain the allegation that ' it was within the knowledge of the defendants that N. Snyder & Co., by some means or other, attempted

and did perpetrate a gross deceit and wrong upon said committee, in surreptitiously departing from the specification for a certain contract for the construction of boilers,' &c., or that 'N. Snyder was a man of intemperate habits, whose character for sobriety was not such as would warrant the committee in giving said firm such a responsible contract,' or that 'N. Snyder had attempted to bribe the mechanical engineer of the water-works,' &c., as alleged in the fourth paragraph of defendants' answer; but we are of opinion, as alleged by defendants, that said committee and councils were of the full belief that such facts were true. Then the question arises whether the city had a right to look beyond the mere pecuniary responsibility of a bidder in the case in hand, and if so, what effect a mistake, honestly made, will have upon the question before us.

"Without entering into an argument to support our position, we think that the word responsible in the Act of Assembly, in regard to contracts, such as require skill, integrity and care, as well as a pecuniary ability to indemnify the city against all failures of performance, and to compensate for damages of nonfeasance and misfeasance of the contractor and his employees, has a much broader meaning than such as is directly involved in pecuniary ability to make good a contract by security for its faithful performance. In cases where a mere pecuniary liability is involved, as in becoming security for the payment of a debt, or even bail for the performance of a contract, the construction would be different, because all that is involved in that case is the pecuniary responsibility of the security; but where more is required of the party asking the contract, common reason requires a broader interpretation, and we therefore think the city had a right to look beyond the mere pecuniary responsibility of plaintiffs and the sufficiency of their bail. But we have found under the evidence in the cause, that the plaintiffs were responsible in all points in which the city had a right to inquire, and now the question arises (assuming for the present that it was the duty of the water committee to give the contract to the lowest responsible bidder), can this court by mandamus compel the defendants to give it to plaintiffs? In determining that, the word responsible involves in cases like the present an inquiry into matters other than such as are mere matters of pecuniary calculation, and that it properly includes the examination into moral qualities, which necessarily go to make up the character of a man, who is a proper person to have such a contract in view of an honest and expeditious performance of his agreement, the case is brought directly within the line of the well-settled law, which determines that wherever the act required to be done involves investigation, and the exercise of discretion and judgment, it cannot be reached by mandamus, at least in the absence of clear proof of fraud and bad faith. In this view of the case, we think the water committee ought to have given the contract (if to any of the bidders) to the plaintiffs, but we see no

[Commonwealth v. Mitchell.]

evidence of fraud on their part, and are therefore compelled to refuse the mandamus as prayed for."

The court thereupon ordered judgment to be entered for the defendants.

The relators excepted to the conclusions of law contained in this decision of the court, which exceptions the court overruled, and this action was assigned as error.

*A. M. Brown* and *W. H. & A. N. Sutton*, for plaintiffs in error. —The popular and received import of words furnishes the general rule for the interpretation of statutes; that which the words declare is the meaning of the instrument, and neither the courts nor the legislature have a right to add or take away from that meaning. The words of the statute, "lowest responsible bidders," are a modification of a former statute, which used the words "lowest and best bidder," and was intended to confine the meaning of the word "responsible" to pecuniary responsibility and not to moral, personal or professional qualifications: Jackson *v.* Lewis, 17 Johns. 475; Farley *v.* Day, 6 Foster (N. H.) 527; Newall *v.* The People, 7 N. Y. 9. Councils are public agents created to perform public functions, and in cases where the public interests are concerned and third parties have a claim, the powers vested in these authorities should be exercised as the statute directs, and upon a refusal to perform their plain duty mandamus lies to compel them: Dillon's Municipal Corp., sect. 62; People *v.* Flagg, 17 N. Y. 584; Mason *v.* Fearson, 9. Howard 248; Commonwealth *v.* Pittsburgh, 8 Am. Law Reg. 286; Commonwealth *v.* Councils of Pittsburgh, 10 Casey 496; Boren & Guckes, *v.* Commissioners of Darke County, 21 Ohio St. Rep. 311; Supervisors *v.* United States, 4 Wall. 435; The People *v.* Croton Aqueduct Board, 49 Barb. 259; May *v.* City of Detroit, 12 Am. Law Reg. N. S. 149; Mayor of City of Baltimore *v.* Marriott, 9 Md. 174; McCarthy *v.* City of Syracuse, 46 N. Y. 190.

*Slagle & Wiley* (with whom was *Thos. S. Bigelow*, City Solicitor), for defendants in error.—The question is narrowed to this: Is a municipal corporation, under the Act of May 23d 1874, bound to award contracts to the lowest bidder who may happen to be financially able to answer for his default, without regard to his character in other respects, though the city authorities know, or which is the same thing, fully believe, that they cannot rely upon his integrity to faithfully perform his part of the contract. The word responsible certainly implies more than mere pecuniary ability: May *v.* Detroit, 12 Am. Law Reg. N. S. 149; Fairman *v.* Commissioners of Darke County, 21 Ohio St. Rep. 311; State *v.* Commissioners, 18 Id. 386; Adams *v.* Looz, New York Court of Appeals, 2 New York Weekly Dig. 27. The right of relators to the writ of mandamus is ex-

[Commonwealth *v.* Mitchell.]

pressly denied in several well considered cases: State *v.* Fond Du Lac, 24 Wis. 684 ; High on Extraordinary Remedies, sects. 91, 92, and authorities therein cited.

Mr. Justice GORDON delivered the opinion of the court, November 6th 1876.

This is a petition by Nicholas Snyder *et al.*, members of the firm of N. Snyder & Co., for a writ of mandamus against the Water Committee of Councils of the city of Pittsburgh.  The petition set forth, *inter alia*, that the committee, having in charge the erection of water-works for the aforesaid city, did, sometime during the year 1874, invite sealed proposals for the construction and delivery in place of certain "wrought-iron forcing mains;" that the relators, " expert and responsible iron-workers," among others did deliver to the said commissioners, sealed proposals for the manufacture and delivery of the proposed work, and that the bid therein contained was lower by some $5000 than that of any other bidder; that said proposals and bid were accompanied by a bond, in due form, as security for the proper execution of the work designated signed by two responsible sureties ; that, notwithstanding these facts, the said water commissioners awarded the contract to the firm of J. M. Brush & Co., at a higher bid than that of the relators, thus unjustly and unlawfully passing by and refusing to accept their bid.   The answer of the defendants admits the facts as set forth in the petition, but denies the responsibility of Snyder & Co., and their competency and ability to perform the proposed work and to fulfil the required contract.   It also sets out and specifies the facts on which these allegations are based, as follows: " That it is within the knowledge and full belief of the said committee that N. Snyder & Co., by some means or other, attempted and did perpetrate a gross deceit and wrong upon said committee, in surreptitiously departing from the specifications for a certain contract for the construction of boilers for the new water-works, by striking therefrom, without the knowledge or consent of said committee, the words ' mud drums,' whereby said committee have suffered considerable vexation and annoyance, and whereby said city will, in all probability, be compelled to litigate with the said N. Snyder & Co., resulting in considerable loss to said city ; that it is within the knowledge of some, if not all of the members of the water committee, that N. Snyder, the senior member of the firm of N. Snyder & Co., was a man of intemperate habits, whose character for sobriety was not such as would warrant the committee in giving said firm such a responsible contract; that said N. Snyder also had attempted to bribe the mechanical engineer of the water-works, who was, by virtue of his office, the inspecting officer of said contract; and that said N. Snyder & Co. were otherwise disqualified for the proper fulfilment of the requirements of the proposed contract."   The learned judge

who, as the mouth-piece of the court to which this case was submitted, under the provisions of the Act of April 22d 1874, delivers the opinion, finds that the facts stated in the petition are true, and that the allegations contained in the answer, as above set forth, are wholly without foundation, but that, notwithstanding this, the committee fully believed that what was asserted in the answer was true.   We must take this opinion of the court as to the belief of the respondents to be correct, not only because we are bound by this finding, as though it were that of a jury, but because we cannot suppose the gentlemen composing the committee would state anything that they did not believe; nevertheless, it does somewhat surprise us, that this body of men, intrusted with so important a duty, should have rested so contentedly under a delusion which a little inquiry in the right direction would have dissipated, and thus saved a handsome sum of money to the city treasury.

The facts, as above stated, having been found in favor of the relators, we next have to consider the Act of Assembly under which this case arises.   It reads thus:  "All stationery, printing, paper and fuel used in the councils and in other departments of the city government, and all work and materials required by the city, shall be furnished and the printing and all other kinds of work to be done for the city, shall be performed under contract to be given to the lowest responsible bidder, under such regulations as shall be prescribed by ordinance."  (Act 23d May 1874, Pamph. L. 230.) Now the court below, though they found, under the evidence, that the relators were responsible in all points in which the city had a right to inquire, yet they held that the word "responsible," as employed in the act, when applied to contracts, requiring for their execution, not only pecuniary ability, but also judgment and skill, imposes, not merely a ministerial duty upon the city authorities, such as would result did their powers extend no further than to ascertain whose was the lowest bid, and the pecuniary responsibility of the bidder and his sureties, but also duties and powers which are deliberative and discretionary.  In this we concur with the court below.   For it is scarcely open to doubt, but that the word under consideration, as it is used in the statute, means something more than pecuniary ability.   In a contract, such as the one in controversy, the work must be promptly, faithfully and well done—it must, or ought to be conscientious work; to do such work requires prompt, skilful and faithful men.   A dishonest contractor may impose work upon the city, in spite of the utmost caution of the superintending engineer, apparently good, and even capable of bearing its duty for a time, which in the end may prove to be a total failure and worse than useless.   Granted, that from such a contractor pecuniary damages, may be recovered by an action at law; this is, at best but a last resort, that often produces more vexation than profit—a mere patch upon a bad job; an exceedingly

[Commonwealth v. Mitchell.]

meager compensation, at best, for the delay and incalculable damage resulting to a great city from the want of a competent supply of water. The city requires honest work, not lawsuits. Were we to accept the interpretation insisted upon by the relators, the difference of a single dollar, in a bid for the most important contract, might determine the question in favor of some unskilful rogue as against an upright and skilful mechanic. Again we know that, as a rule, cheap work and cheap workmen are but convertible terms for poor work and poor workmen, and if the city, for the mere sake of cheapness, must put up with these, it is indeed in a most unfortunate position. It is unnecessary, therefore, to resort to authority for the condemnation of the interpretation, by which the ruling of the court below is sought to be overturned, for it is opposed to the unbiassed judgment of all reflecting men, whether lawyers or laymen, and its adoption would be productive of far more evil than good. Agreeing then, as we do, with the Common Pleas that the duty imposed upon the respondents was deliberative and discretionary, we must also admit the conclusion reached by that court, to wit: that the writ of mandamus will not lie. For it is settled beyond controversy, that where the complaint is against a person or body that has a discretionary or deliberative function to exercise, and that person or body has exercised that function, according to the best of his or its judgment, the writ of mandamus will not be granted to compel the undoing of that which has been done: Griffith v. Cochran, 5 Binn. 87; Commonwealth ex rel. Watt v. Perkins, 7 Barr 42.

In the case in hand the respondents have performed their prescribed duty; not indeed in a manner satisfactory to the judge who delivered the opinion of the court below, and whose opinion we fully endorse, nor with much profit to the city treasury, but, nevertheless, not fraudulently or corruptly, and so we must let the matter stand. There is another aspect of this case, and which is quite as fatal to the right of the relators as that just discussed. It is a well-established rule that he who sues for the writ of mandamus, must have some well-defined right to enforce, which is specific, complete and legal, and for which there is no other specific legal remedy, and the right which he claims must be independent of that which he holds in common with the public at large: Heffner v. The Commonwealth, 4 Casey 108. But Snyder & Co. had no such right as above stated. By their bid they proposed to contract for certain work; that bid was not accepted. It was a mere proposal that bound neither party, and as it never was consummated by a contract, the city acquired no right against the relators nor they against the city. Snyder & Co. are wanting in a specific remedy only because they have failed to establish a legal right. The injury, if any, resulting from the rejection of their bid, fell upon the public and not upon them personally. It may be that, if they had obtained the con-

[Commonwealth v. Mitchell.]

tract, they might have made a profit, but the law takes cognisance of neither speculative contracts nor speculative damages, but only such as are fixed and definite.    Where there is no contract there is no law, *legem enim contractus dat.*

Judgment affirmed.