FARMERS MUT. INSURANCE CO. v. NEW HOLLAND
TURNPIKE CO.

ERROR TO THE COURT OF COMMON PLEAS OF LANCASTER
COUNTY.

|122    37|
|114   513|
122       37
e 33 SC ²225
33 SC ²227

Argued May 18, 1888—Decided October 1, 1888.

1. The liability upon a policy insuring a turnpike company against loss of
   a bridge by fire, is to be measured by the pecuniary value of the injury
   to the bridge, not by the loss of tolls suffered before the bridge was re-
   built.
2. A turnpike company has no insurable interest in a public county bridge,
   on the line of its road but free to all travel, even though the company
   directly contributed to the cost of the erection and maintenance of the
   bridge.
3. Especially should there be no recovery upon a policy insuring a turn-
   pike company against the loss of such bridge, when the bridge was
   afterwards re-erected wholly at the expense of the county.
4. In such an action, there is no such identity of interest between the turn-
   pike company and the county as will entitle the county to intervene pro
   interesse suo as a party plaintiff.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK
and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 87 January Term 1888, Sup. Ct.; court below, No. 35
June Term 1883, C. P.

On May 25, 1883, an action of covenant was brought by the
New Holland Turnpike Co. against The Farmers Mutual Insur-
ance Company, of Lancaster county, to recover upon a policy
of insurance for $4,000, dated January 20, 1871, upon the
bridge over Conestoga creek, where the said road crosses the
creek, on the line between East Lampeter and Manheim town-
ships. The defendant pleaded, covenants performed, absque
hoc.

On December 23, 1886, Mr. A. F. Schenck, on behalf of the
commissioners of Lancaster county, moved that the county of
Lancaster be allowed to intervene in the case as a claimant.
Objected to by the defendant. Objection overruled; motion
allowed.[10]

At the trial on October 17, 1887, the following facts appeared:

The bridge in question was erected by Christian Binkley, in 1777 or 1778, as a private enterprise, and upon his own lands. On June 18, 1801, by deed duly recorded, Binkley conveyed the land on which the bridge stood and one perch in extent of land around it, to Martin Myer, Jacob Gryder, and others, in trust for the public use and benefit of the county of Lancaster, and as a free bridge forever.

The New Holland Turnpike Road Company was incorporated by the act of March 20, 1810, 5 Sm. L. 160, and was authorized to establish a turnpike road, beginning at the Blue Ball tavern, on the Downingstown, Ephrata and Harrisburg turnpike, extending through New Holland to Binkley's bridge; thence to the borough of Lancaster. Under its charter, the company organized and constructed a turnpike road from New Holland to the east end of Binkley's bridge, and from the west end of Binkley's bridge to Lancaster.

By § 1, act of May 21, 1857, P. L. 653, it was enacted " That all bridges which have been or hereafter shall be erected or purchased at the expense in part or in whole of the county of Lancaster, and which are or shall be situated upon the route of any turnpike road, and used by the company owning such turnpike road, shall be kept in repair by the turnpike company upon whose road such bridges are or shall be built and used." The second section of the act contained further provisions enforcing the duty enjoined in the foregoing.

The old bridge was destroyed by a flood in 1867, and in 1868 it was rebuilt at a cost of $16,500, of which sum the plaintiff contributed the one third, or $5,500. The company contributed to repairs occasionally, in the same proportion.

In the application for the policy of insurance put in evidence, it is said: " This bridge is about four miles from Lancaster, and about eight miles from New Holland, and was erected in the year 1868, at the expense partly of the county of Lancaster, and partly of The Lancaster & New Holland Turnpike Co.; insured for the benefit of said Lancaster & New Holland Turnpike Co., in the name of its President, Solomon Diller, at the sum of $4,000."

The bridge covered by the policy was destroyed by fire on

November 25, 1882.   On May 12, 1883, proceedings by manda-
mus were begun in the Court of Common Pleas of Lancaster
county, to compel the county commissioners to rebuild the
bridge.   The cause reaching this court, it was held that the
special act quoted, and others, were repealed by the general act
of May 5, 1876, P. L. 112, that the bridge in question was a
county bridge, and the judgment of the Court of Common
Pleas awarding a peremptory mandamus was affirmed: Myers
v. Commonwealth, 110 Pa. 217.   Thereupon the county com-
missioners in 1885–6 erected a new bridge of iron, and wholly
at the expense of the county.

The plaintiff having given in evidence the policy, applica-
tion, the assessments paid to the defendant company to the
date of the loss and the destruction of the bridge, showed that
it was again open for travel about April 1, 1886, and called
James Diller, the treasurer of the plaintiff company :

Q. If you can, state what the losses in tolls to the New Hol-
land Turnpike Co. were, during the time the bridge was down,
as ascertained by comparison of three years before and after-
wards?   Objected to.

By the court : Objection overruled.[4]

Under this offer it was shown that the tolls received by the
plaintiff

| | | |
|---|---|---|
| In 1880 were . . . . . | | $5,949 39 |
| In 1881 " . . . . . . | | $5,610 21 |
| In 1882 " . . . . . | | $5,694 62 |
| Total . . . . . . | | $17,254 22 |
| In 1883 . . . . | $4,621 08 | |
| In 1884 . . . . . | 4,744 40 | |
| In 1885 . . . . | 4,559 52 | |
| | | $13,925 00 |
| Loss claimed . . . . | | $3,329 22 |

The case being closed on the evidence, the court, PATTER-
SON, J., charged the jury as follows :

You have already heard that this suit is brought by The New
Holland Turnpike Road Company against the Farmers' Mutual
Insurance Company, of Lancaster county.   It is a suit in debt,

to recover, as the narr says, four thousand dollars which was insured in that company on the bridge mentioned in the evidence, and here called Binkley's bridge. You have heard the evidence in regard to that; and you have the evidence before you that this plaintiff paid all the assessments assessed by that company upon it from the year 1871 up to the time of the burning of the bridge, which happened on November 25, 1882. The bridge was burned down on that day. The policy was given in evidence and it is not disputed that this company so issued it to the plaintiff in this case in the following language : The company say that they "received from Solomon Diller, president of The New Holland Turnpike Company, the sum of one dollar, the amount of the premium for making the insurance on the bridge over the Conestoga creek where the said road crosses the creek, being on the line between East Lampeter and Manheim townships, said bridge being 300 feet long and 16 feet on the floor, having two spans, each about 150 feet, double arch, covered with shingles, cost $16,500; to be insured in this company at the sum of $4,000; situated in the townships of East Lampeter and Manheim, amounting to the sum of $4,000 agreeably to the specifications on file in the office of the company." And therefore, they bind themselves to pay the insured, their heirs, executors, and so forth, that sum.

The court has held that the plaintiff here has shown an insurable interest, although it has no ownership in the bridge, legal ownership in the land upon which it was located; but [we hold that the plaintiff has an equitable interest which may be insured.] [3] That is a question of law for the court,—and if the court is wrong in regard to that, of course, the Supreme Court will put us right. .

Now, if you believe this testimony, the testimony submitted by the plaintiff, because I will not repeat it, under the law the plaintiff is entitled to recover, and we say no more except what we say in regard to the points submitted. Each side here submitted one point to the court, which the court is always bound under the law to answer.

The defendant's point is as follows :

It has not been proved or shown, nor has any evidence been given on the trial of the case, that the plaintiff had any insurable interest in the bridge mentioned in the policy in suit,

and therefore, the plaintiff cannot recover for the destruction by fire of the said bridge.

Answer: We deny that point. We refuse to affirm that point.[2]

The plaintiff's point is as follows:

The court is respectfully asked to charge the jury that, under the law and the evidence, the plaintiff is entitled to their verdict for the amount stipulated to be paid in the policy of insurance, on which this action is based, with interest from February 3, 1883, being 70 days after the burning of the said bridge; with interest from that date up to this date.

Answer: We affirm that point, if you believe the testimony of the plaintiff, and say to you, if you believe that, then under the law the plaintiff should have your verdict for that amount with interest from the time of the burning of the bridge, which they have mentioned was on November 25, 1882; from that time to the present time they are entitled to the interest, if they are entitled to the principal, less seventy days.[1]

With these remarks we will submit the case to you, and you will say how you find. The facts are hardly disputed, and it is a mere question of law, so that you will render your verdict in accordance with these instructions.

The jury found in favor of the plaintiff and assessed the damages at $5,130. Judgment being entered, the defendant took this writ, and assigned as error:

1. The answer to the plaintiff's point.[1]
2. The answer to the defendant's point.[2]
3. The part of the charge embraced in [ ][3]
4. The admission of plaintiff's offer.[4]
10. The allowance of the motion of the county of Lancaster to intervene as a claimant.[10]

*Mr. H. M. North* (with him *Mr. A. O. Newpher*), for the plaintiff in error:

A pecuniary loss by the destruction of property may be suffered without the insured having an insurable interest therein. One's property may be depreciated by the destruction of his neighbor's improvements; his taxes may be increased by the destruction of the public buildings and bridges of the county,

yet it is not believed he can have them insured for his own benefit. The plaintiff was the owner of a turnpike road running to the two ends of the bridge ; it had no right to and never collected tolls for the use of the bridge. The bridge was free; owned in fee by the county of Lancaster.

1. Though it is extremely difficult to afford any accurate definition of insurable interest, yet an examination of the cases seems to settle the law that an insurable interest must be some interest, or legal or equitable right, which may be enforced as to the property insured, in a court of law or equity : Flanders on F. Ins., 341, 388 ; 1 Wood on F. Ins., 625, 637, 647 ; Pritchet v. Insurance Co., 3 Y. 461 ; Edgell v. McLaughlin, 6 Wh. 179 ; Phillips v. Insurance Co., 20 Ohio 174 ; Rorhback v. Insurance Co., 62 N. Y. 47 ; Miltenberger v. Beacom, 9 Pa. 199 ; Smith v. Insurance Co., 17 Pa. 260 ; Sweeny v. Insurance Co., 20 Pa. 342 ; Coursin v. Insurance Co., 46 Pa. 330 ; Imp. F. Ins. Co. v. Murray, 73 Pa. 13 ; Wilson v. Insurance Co., 19 Pa. 374 ; Grevemeyer v. Insurance Co., 62 Pa. 342. The plaintiff company had no such right in this bridge.

2. It was also error to permit the county of Lancaster to intervene as a claimant. There was no petition, only the simple motion on the record ; no allegation of any right on the part of the county ; no evidence of any authority from the county commissioners to have an insurance effected, and it was unfair to the defendant to have the county on the record as a claimant.

*Mr. A. M. Frantz* (with him *Mr. S. H. Reynolds*), for the defendant in error :

1. "Insurance is a contract by which one party, in consideration of a price paid to him adequate to the risk, becomes security to the other, that he shall not suffer loss, damage or prejudice by the happening of the perils specified, to certain things which may be exposed to them. If this be the general nature of the contract of insurance, it follows that it is applicable to protect men against uncertain events which may in any wise be of disadvantage to them. Not only to those persons to whom positive loss may arise by such events, occasioning the deprivation of that which they may possess, but those also who in consequence of such events may have intercepted from them the advantage

or profit they would acquire according to the ordinary and probable course of things:" Putnam v. Insurance Co., 5 Met. 393. " An insurable interest does not rigorously mean that the assured must have an absolute right of property in the thing insured. If he have a special limited interest, or if he would suffer any disadvantage by the destruction of the premises, or any reasonable expectation of profit would be thereby defeated, he may protect or indemnify himself by insurance, and this whether he has or has not any title or lien upon or possession of the property insured: " Flanders on Fire Insurance, 377. These judicial utterances are so comprehensive, concise and clear, that one can neither add thereto nor take therefrom without obscuring the light they furnish.

2. The act of May 21, 1857, P. L. 653, requiring the plaintiff company to keep the bridge in repair, etc., has a material bearing upon the question of insurable interest. Moreover, if the act of 1857 made the plaintiff responsible for the care of the bridge, and the act of 1876 relieved it from rebuilding, what is that to the defendant company? It continued to receive its assessments regularly after the latter act was passed, and, if unwilling to carry the risk thereafter, it was bound to give notice and call in or cancel its policy. If for any subsisting cause, an insurance policy might be canceled by the insurer, and the company does not do it but continues to make and collect assessments, it is estopped: Frost v. Insurance Co., 5 Den. 154; Grandin v. Insurance Co., 107 Pa. 26. The parties who built the bridge that was destroyed would have the best right to insure it; these parties were the county of Lancaster and the New Holland Turnpike Road Co.

OPINION, MR. JUSTICE GREEN:

We cannot understand upon what principle evidence was admitted to prove loss of tolls on the turnpike road of the plaintiff.

The contract in suit was a policy of fire insurance on a bridge. The bridge having been destroyed by fire, if there was liability on the part of the insurance company, the measure of that liability would be the value of the loss, which would consist of the injury to the bridge. If the bridge was totally destroyed, the loss would be the total amount of the insurance,

but if only partially destroyed, it would be the value of the injury. In no circumstances can there be a legitimate measure of liability on a fire insurance policy which represents the loss of profits of a business which might be carried on at the structure destroyed, if it were standing. Such is not the contract of the parties. Neither is there any liability as for rent of the premises destroyed or for any other advantage which may have been derived from its use. If a period of time elapses before the building is restored, or if it is never restored, the liability of the insurer is not for a loss of the use or rental of the building, but for the value of the loss with interest on the same until payment is made. These fundamental principles which are inherent in the contract of insurance were disregarded when the plaintiff was permitted to prove the loss of tolls for non-user of the bridge while it was being rebuilt. For this reason we sustain the fourth assignment of error.

We think it was also error to permit the county of Lancaster to interplead as a claimant. There was no contract of insurance with the county, and after intervening there could be no recovery, as for any loss sustained by the county. There was no identity of interest in the bridge as between the turnpike company and the county. If the turnpike company had any interest in it, it was that interest which was represented by the amount of its contribution to the cost of the bridge, but in that contribution the county necessarily could have no interest. The whole of it belonged to the turnpike company, and no part of it, in any contingency, belonged to the county. The principle recognized in Miltenberger v. Beacom, 9 Pa. 198, has no application. We therefore sustain the tenth assignment of error.

The more important question, however, is, whether the turnpike company had any insurable interest in the bridge. It is a novel question, but perhaps not difficult of solution. The basis, upon which the insurable interest is claimed to exist, is the fact that the turnpike company contributed $5,500 to the cost of erecting the bridge, being one third its total cost, $16,500. If this contribution was compulsory—that is, legally compulsory—it would perhaps have to be admitted that an interest in the bridge, legal or equitable, would necessarily flow from it. For it cannot be supposed that the law would oblige

any person or corporation to contribute directly to the cost of erecting a structure, without conferring an interest in the structure which the law would recognize and enforce. While saying this, we do not of course refer to that kind of contribution which is accomplished by the payment of taxes. Such contribution is, of course, for public use, and confers no title or interest upon the tax payer in structures which may be erected with public funds. But in this case there is no pretence of any compulsion upon the turnpike company. The evidence as to the payment of the money is barren of information, except as to the mere fact of the payment.

There is absolutely no testimony to prove why or upon what consideration, or for what purpose or reason, the turnpike company paid any part of the cost of erecting the bridge. It is not difficult to imagine a reason, since, as the company's road crossed the stream over which the bridge was erected, it would be quite desirable for them to have a bridge over which persons using the road could travel. But while that might be a reason for the company building a bridge of its own, it was still the fact that the bridge was a public county bridge, free to all travel, built many years before by a private person who transferred it to the county, and hence the property of the county exclusively. Being thus a free, public bridge, there could not possibly be any private estate or ownership in it. The turnpike company could charge no tolls for passing over it. They could exercise no acts of ownership over it. They could not obstruct it nor take it down, even if to rebuild it, without the consent of the county, and perhaps not even with such consent, as it was a part of the public highway.

In point of fact, while the turnpike company did contribute the third part of the cost of its erection, after the former bridge had fallen down, the county at that time paid the other two thirds of the cost, and re-erected the bridge in discharge of its undoubted legal obligation to do so. And so, after its destruction by fire in 1882, it was again rebuilt by the county as a public county bridge in obedience to a general law of this commonwealth, act of May 5, 1876, P. L. 112, and the decree of this court: Myers v. Commonwealth, 110 Pa. 217. All this was done without any cost to this plaintiff, who now enjoys the use of the bridge in the same manner and to the

same extent as before the fire. The only injury the plaintiff has sustained by the fire, is in being deprived of the use of the bridge, not as its own, but as a part of the public highway, during the period of the reconstruction of the bridge. But, for that injury the defendant was not responsible in any sense, and it never assumed an obligation to make compensation for it. The county was legally charged with the duty of rebuilding, and however an argument might be made against the county for not performing its duty in that regard with promptness, it is perfectly manifest that the breach of that duty by the county conferred no right of action against the defendant insurance company. What then remains to impose any liability upon the defendant? The bridge is restored without any expense to the plaintiff. Every right which the plaintiff enjoyed before the fire is enjoyed since, so far as the bridge is concerned, without any additional cost to the plaintiff. It may be remarked in passing that the right of the plaintiff in the bridge is only the public and common right of its patrons as citizens, to use the bridge as a part of the public highway. It is therefore not a right peculiar to the plaintiff in any sense.

It may well be questioned, even if the plaintiff had an insurable interest in the bridge, whether any injury has been sustained to that interest, sufficient to impose any liability upon the defendant as an insurer. Suppose a recovery is permitted, and the plaintiff recovers the amount of the insurance money. As they are not obliged to expend the money in reconstruction, and yet reconstruction has been accomplished without cost to them, they simply get back and keep the money they voluntarily contributed in 1868 to the construction of the bridge. But if the bridge had not burned down, that money could not have been recovered. How then were they injured by the fire? They have the bridge as they had it before, without cost to them, and the diminution of their tolls during the period of reconstruction cannot be compensated in an action on the policy. For this reason, therefore, if for no other, we cannot discover any cause of action against this defendant.

But independently of this consideration, all the definitions of an insurable interest import an interest in the property insured which can be enforced at law or in equity. Thus, we said in Miltenberger v. Beacom, 9 Pa. 199: "It is accordingly recog-

nized as a rule in this department of the law that almost any qualified property in the thing insured, or any reasonable expectation of profit or advantage to spring from it, may be the subject of this species of contract, provided it be founded in some legal or equitable title."

In Wood on Fire Insurance, 625–6, it is said: "A right, too, must be of such a nature in order to constitute an interest, as the law will recognize and enforce, for a mere moral title will not sustain an insurance." Flanders on Insurance, 388: "A mere general interest, not susceptible of enforcement, which does not specifically apply either in terms or by the operation of law is not insurable." 1 Wood on Fire Insurance, 656: "The interest must be enforceable either at law or in equity." Wilson v. Insurance Co., 19 Pa. 374: "Interest in the property insured is an essential link in the relation of insurance." Sweeny v. Insurance Co., 20 Pa. 342: "The rule is valuable and well founded that he who has no interest can have no insurance. That he must show his interest and that it is the extreme measure of his recovery, are the corollaries of the rule:" Imperial Fire Insurance Co. v. Murray, 73 Pa. 28: "Hence the court was correct in charging that the insurable interest of the lessees was to the extent of the value of the property which they were bound to replace." See, also, Grevemeyer v. Insurance Co., 62 Pa. 340.

It is unnecessary to multiply citations. There was clearly no interest in the bridge belonging to the turnpike company, which could be recognized or enforced either at law or in equity. There could not be any right of property of any kind, nor of possession, nor of custody. Even the use of it was not a use by the plaintiff in its corporate capacity, but a mere right of passage over it which belonged to all citizens in common. The money which was contributed to its construction by the plaintiff, was a mere gratuity, which it was not bound to give and which it could never recover. In such circumstances there was no interest or property in the bridge as a structure and hence no insurable interest capable of protection and enforcement.

We sustain the first, second, and third assignments.

Judgment reversed.