372 A.2d 1187

**PENNSYLVANIA TAVERN ASSOCIA-
TION et al., Appellees,**

v.

**COMMONWEALTH of Pennsylvania, Pennsylvania LIQUOR
CONTROL BOARD and Elemar, Inc., et al.,
Appellants.**

Supreme Court of Pennsylvania.

Argued Oct. 15, 1976.

Decided Jan. 28, 1977.

Rehearing Denied May 4, 1977.

Rodger L. Mutzel, Thomas J. Shannon, Media, for appellants.

John H. Bream, Gregory M. Kerwin, Harrisburg, for appellees.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

PER CURIAM.

On May 8, 1972, the Pennsylvania Liquor Control Board (Board) issued identical citations against the appellants in this action, three Lancaster County beer distributors; Elemar, Inc., Garrett Hill Beverage Co., Inc. and Railsplitter, Inc., all of which were trading under the name "Thrifty Beverage". Each of the licensees was charged with having "permitted a person who has an interest in another Distributor or Importing Distributor License to have an interest in your licensed premises," in violation of Sections 436(f) and 438(b) of the Pennsylvania Liquor Code.[1]

---

1. *See* Section 438(b) of the Liquor Code, Act of April 12, 1951, P. L. 90, as amended, 47 P.S. § 4–438(b), which provides that "[n]o person shall possess or be issued more than one distributor's or importing distributor's license," and Section 436(f), 47 P.S. § 4–436(f), which requires that application for distributors' licenses

After an administrative hearing held on August 25, 1972, the Board determined that the franchise agreements between each of the appellant licensees and their managing, consulting firm, General Programming, Inc., did in fact violate the aforementioned Code provisions, and suspended the licensees respective distributor's licenses for a period of twenty-one days and thereafter, until all persons other than the licensees had divested themselves of all interest in the licensed businesses. That decision was subsequently appealed by all three licensees to the Court of Common Pleas of Lancaster County which, after holding a de novo hearing, sustained the Board's order.[2]

The licensees thereafter filed an appeal before the Commonwealth Court. However, on August 19, 1974, prior to argument and submission of briefs, the Board, the licensees and General Programming, Inc., entered into a stipulation in which the three licensees cancelled and modified all existing contracts with General Programming, Inc. to conform to the opinion of the Court of Common Pleas of Lancaster County. In addition, the Board agreed to vacate its original order and instead of suspension, imposed a fine of $1,000.00 upon each of the licensees. Thereafter, pursuant to the stipulation, which was never approved by the Lancaster County or Com-

contain or have attached thereto the statement that "applicant is the only person in any manner pecuniarily interested in the business so asked to be licensed, and that no other person shall be in any manner pecuniarily interested therein during the continuance of the license . . . ."

2. The Order of the Court of Common Pleas of Lancaster County provided in full as follows:

AND NOW, October 19, 1973, for the foregoing reasons, the order of the Pennsylvania Liquor Control Board of August 25, 1972 suspending the licenses of Elemar, Inc. t/a Thrifty Beverage, Garrett Hill Beverage Co., Inc. t/a Thrifty Beverage, and Railsplitter, Inc. t/a Thrifty Beverage, for twenty-one days and thereafter until persons other than the licensee has been divested of all interests in the licensed premises, is sustained, and the appeals in these cases are dismissed.

monweath Courts, the licensees withdrew their appeals then pending in the Commonwealth Court.

On December 10, 1974, appellees in this appeal, Pennsylvania Tavern Association and P.U.B.L.I.C.,[3] initiated the present mandamus action in Commonwealth Court, seeking to compel the Board to enforce the original suspension order.[4] The Commonwealth Court, after dismissing preliminary objections filed by the Board,[5] concluded that the Board lacked authority to modify its order after it had been judicially reviewed and sustained, and granted appellees' motion for summary judgment. The court issued the requested writ of mandamus, ordering the Board to reinstate and enforce its original order of suspension. This appeal followed.[6] Because we do not believe that the relief requested by the appellees and granted by the Commonwealth Court was appropriate on this record, we reverse.

This Court has repeatedly stated that mandamus "is a high prerogative writ representing an extraordinary remedy which will not be granted in doubtful cases."

**3.** Appellee P.U.B.L.I.C. is an unincorporated association composed of liquor license holders organized to moniter and "uphold uniform enforcement of the Liquor Code." (Appellees Complaint, ¶ 1).

**4.** The appellant licensees, and the appellant General Programming, Inc., petitioned the Commonwealth Court on October 1, 1975, to intervene in the mandamus action. The petition to intervene was granted by that court on November 6, 1975.

**5.** The preliminary objections filed by the Board were directed to the standing of the appellees to maintain this action in mandamus. The Commonwealth Court, however, determined that the objections were improper as failing to comply with Pa.R.C.P. 1017(b). *Pennsylvania Tavern Association, et al. v. Commonwealth, Pennsylvania Liquor Control Board*, 21 Pa.Cmwlth. 101, 343 A.2d 687 (1975). In view of our determination that the order of the Commonwealth Court must be reversed for other reasons, we need not consider the propriety of the Commonwealth Court's decision finding the preliminary objections procedurally defective.

**6.** Jurisdiction in this Court is based on the Act of July 31, 1970, P.L. 673, No. 223, Article II, Section 203, 17 P.S. § 211.203 (Supp. 1975–76).

*Francis v. Corleto,* 418 Pa. 417, 421, 211 A.2d 503, 505 (1965). Moreover, it is by now axiomatic that mandamus lies to compel the performance of a ministerial act or mandatory duty only "where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and *a want of any other appropriate and adequate remedy." Valley Forge Racing Association, Inc. v. State Horse Racing Commission,* 449 Pa. 292, 295, 297 A.2d 823, 825 (1972) (emphasis added). *See also, Philadelphia Presbytery Homes, Inc. v. Abington Board of Commissioners,* 440 Pa. 299, 269 A.2d 871 (1970); *Unger v. Hampton Township,* 437 Pa. 399, 263 A.2d 385 (1970); *Verratti v. Ridley Township,* 416 Pa. 242, 206 A.2d 13 (1965); *Mellinger v. Kuhn,* 388 Pa. 83, 130 A.2d 154 (1957); *Garratt v. Philadelphia,* 387 Pa. 442, 127 A.2d 738 (1956); *Commonwealth v. Mitchell,* 82 Pa. 343 (1876). It is therefore clear that if appellees had available an adequate alternative remedy by which to seek relief, the Commonwealth Court abused its discretion in granting the requested writ of mandamus. *See, Porter v. Bloomsburg State College,* 450 Pa. 375, 301 A.2d 621, *cert. denied,* 414 U.S. 844, 94 S.Ct. 105, 38 L.Ed.2d 82 (1973).

In our view, an adequate remedy was available to the appellees in this action by way of a petition to the Lancaster County Court to enforce its own order sustaining the license suspension imposed by the Board. It has long been recognized that courts of general jurisdiction have the power to make effective whatever orders they are authorized to enter. *See generally,* 60 C.J.S. *Motions and Orders* § 67 (1958). We believe, in the circumstances of this case, that enforcement of the order should have been sought first in the Court of Common Pleas of Lancaster County.[7] That court, being most familiar with the ques-

7. One of the issues raised by the Commonwealth in its brief *amicus curiae* was the right of an administrative agency to modify its own order after that order has been reviewed and sustained by a judicial tribunal, without first seeking the approval of that

tions raised and record compiled in the enforcement action, was unquestionably in the best position to consider the legal and practical consequences of the Board's proposed modification of its own order. Thus, it would be most consistent with judicial efficiency to require the court whose order is being ignored or modified to pass upon the wisdom of that action. For this reason, we hold that the Commonwealth Court abused its discretion in issuing the writ in view of the availability to appellees of an adequate alternative remedy at law.

Order of the Commonwealth Court reversed.

ROBERTS, J., filed a concurring opinion in which JONES, C. J., joined.

EAGEN, J., concurs in the result.

MANDERINO, J., filed a dissenting opinion.

ROBERTS, Justice, concurring.

I agree that the order of the Commonwealth Court should be reversed, but cannot accept the reasons set forth by the majority. I do not agree with the majority that appellees have an adequate remedy at law. In my view the action should be dismissed because appellees lack standing.

In 1972 the Liquor Control Board (Board) determined that the franchise agreements between appellants, three Lancaster County beer distributors, and their common management and consulting firm, also an appellant, violated the Pennsylvania Liquor Code.[1] The Board im-

tribunal for such modification. While this presents an interesting question, the appropriate forum for its resolution would in the first instance have been the court which originally heard the matter; the Court of Common Pleas of Lancaster County.

1. Act of April 12, 1951, P.L. 90, §§ 101 et seq., 47 P.S. §§ 1–101 et seq. (1969) (Supp.1976). The specific provisions involved in the enforcement proceeding are substantially set forth in footnote 1 of the majority opinion.

posed sanctions suspending appellants' respective distributors licenses for a period of twenty-one days and thereafter, "until persons other than the licensees had been divested of all interests in the licensed premises." The Board ruling was appealed by all three distributors to the Court of Common Pleas, which sustained the Board's order.

The three distributors subsequently appealed to the Commonwealth Court but, prior to argument and submission of briefs, entered into a stipulation with the management and consulting firm and the Board, agreeing to cancel and modify all existing contracts with the firm, in a manner consistent with the opinion of the Court of Common Pleas. In exchange for this and the distributors' agreement to withdraw the appeal, the Board vacated its original order and imposed a $1,000 fine upon each licensee in lieu of suspension.

Shortly after the appeal was withdrawn, appellees, associations representing competing businesses licensed by the Board, filed this action in mandamus in the Commonwealth Court to compel the Board to enforce the original suspension order. Appellants were granted leave to intervene. The Commonwealth Court dismissed preliminary objections to appellees' standing and issued the requested writ. The court held that the Board lacked authority to modify its order after it had been sustained by the Court of Common Pleas and, therefore, the stipulation entered into after appeal to the Commonwealth Court was a nullity.[2]

The majority passes over the issue of standing and denies the writ because it perceives an adequate remedy at law. It is jurisprudentially preferable to rule on standing before addressing other issues. However, since the majority's decision is based on the availability of manda-

**2.** *Pennsylvania Tavern Association v. Pennsylvania Liquor Control Board,* 21 Pa.Cmwlth. 101, 352 A.2d 221 (1976).

mus, I will state my disagreement with its reasoning before discussing the issue of standing.

The majority denies the writ of mandamus, holding that there is a remedy at law in the form of a petition to the Court of Common Pleas to enforce its order sustaining the license suspensions imposed by the Board. There is no such remedy. Appellees could do no more than request the court to allow an amicus brief which it may, in its discretion, consider. This speculative possibility does not constitute an adequate remedy at law.

The majority suggests the novel proposition that a nonparty may petition the court to enforce an order, after the parties of record have settled the issue among themselves. However, the majority offers no authority for its proposal. 60 C.J.S., *Motions and Orders* § 67 (1958), cited by the majority, is of no assistance. That section concerns the powers of courts to make effective their orders. Nowhere does it suggest that courts should even consider prayers submitted by a nonparty.

Moreover, it is clear that appellees have no hope of becoming parties to the suit. Even if the Court of Common Pleas were to consider the suit still pending—despite an appeal and settlement by the parties—based upon the dubious argument that a suit cannot become final until all orders have been complied with, appellees can assert no legal right to intervene. Intervention is governed by Rule 2327 of the Rules of Civil Procedure, which provides that:

"At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if

(1) the entry of a judgment in such action or the satisfaction of such judgment will impose any liability upon such person to indemnify in whole or in part the party against whom judgment may be entered; or

(2) such person is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof; or

(3) such person could have joined as an original party in the action or could have been joined therein; or

(4) the determination of such action may affect any legally enforceable interest of such person whether or not he may be bound by a judgment in the action.

Appellees do not come within any of the four categories. Sections (1) and (2) are obviously inapplicable. Although the Liquor Code permits a limited class of institutions to appeal from the granting or transfer of a license,[3] there is no comparable provision permitting appellees to join in the appeal from an enforcement proceeding brought against other licensees. Finally, appellees lack a "legally enforceable interest" which will be affected by the determination, as required by section (4).[4]

The Court of Common Pleas has no obligation to accept or act upon a petition relative to a suit to which the petitioner is not a party, and has no authority to permit

---

3. 47 P.S. § 4-464 (Supp.1976) permits "any church, hospital, charitable institution, school or public playground located within three hundred feet of the premises applied for" aggrieved by a decision of the Board issuing or transferring a license to take an appeal "limited to the question of such grievance."

4. The drafters' note to section (4) states that:
   "The interest justifying intervention must be a right or liability recognized and enforceable at law or in equity as distinguished from an economic motive or interest in seeing one litigant or another prevail in the proceedings: *Andrews v. New Bethlehem Window Glass Co.*, 268 Pa. 565, 112 A. 90 (1920); *Appeal of Phila. & Reading Coal & Iron Co. (No. 2)*, 22 D. & C. 475 (1935); *Farmers' Mutual Ins. Co. v. New Holland Turnpike Co.*, 122 Pa. 37, 15 A. 563 (1888); *Hassinger v. Hassinger*, 20 C.C. 485 (1898); *Tonkonogy v. Levin*, 106 Pa. Superior Ct. 448, 162 A. 315 (1932)."
   Appellees assert only that they are suffering economic harm from the failure of the Board to enforce the order of the Lancaster County Court.

intervention by appellees in the enforcement action. It is apparent, then, that appellees do not have an adequate remedy at law.

I conclude, however, that this action should be dismissed because appellees lack standing to maintain a mandamus action to require the Board to enforce its original order to suspend the licenses of the three beer distributors.

The Commonwealth Court found that the issue outstanding had not been properly raised. I cannot agree. The Board filed a preliminary objection in the Commonwealth Court stating in full: "Plaintiffs are not parties to any pending action before the Pennsylvania Liquor Control Board, in which mandamus is sought." The Commonwealth Court overruled the objection, interpreting it as challenging appellees' capacity to bring an appeal from the original enforcement action and declaring it irrelevant to the present suit in mandamus. This is, indeed, an unreasonable conclusion. The Board was well aware that the instant action was in mandamus; the most reasonable interpretation of the objection was that appellees lacked standing to seek enforcement of the order by mandamus because they had not been parties to the suit in which the order had been issued. The Commonwealth Court noted that "even if we assume that the Board *intended to raise* the question of the plaintiffs' lack of capacity to sue in mandamus in this Court, we must conclude that it did not succeed because of the vagueness of the objection filed." (emphasis in original). I do not agree that the objection was too vague to apprise the court of its substance, and believe it should have considered the standing of appellees.

It is therefore necessary to consider whether appellees have standing to maintain this suit in mandamus. In *Dombrowski v. City of Philadelphia*, 431 Pa. 199, 204, 245 A.2d 238, 241 (1968), we held that " . . . a private litigant may maintain a mandamus action to en-

force a public duty when that plaintiff has an individual and beneficial interest in the litigation independent of that which is held by the public at large." The interest must be more than the common interest of all citizens in procuring obedience to the law. *Pennsylvania SPCA v. Bravo Enterprises*, 428 Pa. 350, 361–62, 237 A.2d 342, 349 (1968); *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 192, 346 A.2d 269, 280–81 (1975) (plurality opinion). Beyond this, however, there is no minimum threshold on the magnitude of the interest. See *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. at 194–95, 346 A.2d at 282 (plurality opinion).

In addition, the injury asserted must be directly and immediately related to the action complained of, not a remote consequence. *Dombrowski*, 431 Pa. at 214, 245 A.2d at 246; *Wm. Penn Parking Garage*, 464 Pa. at 197, 346 A.2d at 282–83 (plurality opinion). This requires an examination of the nexus between the injury alleged and the action being challenged. *Wm. Penn Parking*, 464 Pa. at 195, 197, 346 A.2d at 282, 283 (plurality opinion).

The initial inquiry is whether appellees have alleged an individual interest in the litigation beyond the common interest of all citizens in procuring obedience to the law. Appellees allege that its members are suffering continuing financial harm from the failure of the Board to exercise its alleged duty to enforce the original suspension order against appellants.[5]

Appellees' allegation, essentially, is that its members are at a competitive disadvantage vis-a-vis appellants, who allegedly are being allowed to continue operations in vio-

5. In determining standing, the ultimate question whether the Board is in fact under a duty to enforce the order is not implicated. See *Wm. Penn Parking Garage*, 464 Pa. at 200, 346 A.2d at 285 (plurality opinion).

lation of the Liquor Code.[6] Although conflicting cases can be found, the more persuasive decisions recognize the interest of a business to be protected from competition allegedly prohibited by a regulatory scheme.[7] Thus, appellees have met the first test of standing, having alleged an interest distinct from that of the public at large.

The second inquiry is whether a sufficiently close connection between the action complained of and the injury alleged can be established. As was noted in *Wm. Penn Parking Garage,* "[g]eneralization about the degree of causal connection required to confer standing is more difficult than generalization about the other requirements [of standing]." 464 Pa. at 197, 346 A.2d at 283 (plurality opinion). Here, appellees complain of the failure of the Board to fully implement an enforcement order against only three licenses within the Commonwealth, alleging resultant unfair competition between those licensees and appellees' members.

In my judgment, the nexus between appellees' alleged competitive injury and the Board's decision not to fully implement a single enforcement order against three licensees is too remote to confer standing upon appellees.

6. In its brief, appellees also assert an interest in maintaining the integrity of enforcement of the Liquor Code. This, however, is an interest no different from that of the public at large in procuring obedience to the law.

7. *Delaware County National Bank v. Campbell,* 378 Pa. 311, 106 A.2d 416 (1954) (national bank could challenge merger between state banks enhancing competitive potential of local competitor because statutory scheme governing banks designed to protect creditors and stockholders of banks from bank failure caused by excessive competition); e. g., *Association of Data Processing Service Organizations, Inc., v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) (data processing businesses have standing to challenge administrative ruling permitting national banks to compete in field because regulatory scheme arguably protects nonbank competitors).

But cf. *Ritter Finance Company v. Myers,* 401 Pa. 467, 165 A.2d 246 (1960) (small loan company could not challenge grant of a license to a competitor because regulatory scheme not concerned with the level of competition between small loan companies).

In reaching this conclusion, I am influenced by a competing policy consideration: agency discretion in enforcement proceedings. For purposes of standing, I find no distinction between this fact situation and a decision of the Board not to commence enforcement proceedings against a licensee allegedly operating in violation of the Liquor Code. Standing to challenge enforcement decisions relating to other parties implicates the prosecutorial discretion of the enforcement agency. It is the Board, and not competing licensees, which is charged with the enforcement of the Liquor Code.[8] Therefore, standing in this context requires a showing of injury more closely related to the action complained of than would otherwise be necessary.[9]

This policy was relied upon in *Linda R. S. v. Richard D.*, 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973). In *Linda R. S.*, the Court found too speculative and remote the connection between plaintiff's inability to collect support payments for her illegitimate child and the refusal of Texas prosecutors to enforce criminal nonsupport laws against fathers of illegitimate children. Mr. Justice Marshall, writing for the Court, noted that:

"The Court's prior decisions consistently hold that a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution. . . . [I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another. Appellant does have an interest in the support of her child. But given the special status of criminal prosecutions in our system, we hold that appellant has made an insufficient showing of a

8. 47 P.S. § 4–471 (Supp.1976).

9. Cf. *State Board of Undertakers v. Joseph Sekula Funeral Homes, Inc.*, 339 Pa. 309, 14 A.2d 308 (1940) (association of funeral directors had no standing to appeal in a license revocation proceeding because it had no direct interest therein). See also cases cited in note 4, supra.

direct nexus between the vindication of her interest and the enforcement of the State's criminal laws." 410 U.S. at 619, 93 S.Ct. at 1149.[10]

Similar considerations are present here, in which the alleged injury is far less compelling. As in *Linda R.S.*, appellees lack a "judicially cognizable interest" in seeking to enforce a sanction in a controversy that was previously settled by the litigants of record. Hence, appellees are without standing to maintain this action and it is on that basis that the order of the Commonwealth Court should be reversed.

JONES, C. J., joins in this concurring opinion.

MANDERINO, Justice, dissenting.

Because I disagree with the reasoning and conclusions reached by both the majority opinion and the concurring opinion of Mr. Justice Roberts, I will briefly state my view. The majority sidesteps the standing issue, saying that the question need not be considered. Mr. Justice Roberts would hold that appellees lack standing because

---

10. It is this impingement upon prosecutorial discretion which explains the apparent inconsistency between the remoteness analysis in *Linda R.S.* and other standing cases not involving enforcement proceedings. In *United States v. Students Challenging Regulatory Agency Procedure*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973) *(SCRAP)*, for example, the Court found a sufficient nexus to confer standing between a general increase in shipping rates, which was alleged to discriminate against the shipping of recyclable materials vis-a-vis primary ores, and an adverse effect upon plaintiffs' "camping, hiking, fishing, and sightseeing" in the Washington Metropolitan area, allegedly resulting from the greater expense the rates imposed upon the reclamation of waste from the area. It is clear that the nexus between the action complained of and the plaintiffs' injury in *SCRAP* was far more tenuous than in *Linda R.S.*, where it was undisputed that the prosecutor would routinely have brought charges against a former spouse, providing a strong incentive for the father to provide support and avoid punishment. As Professor Davis has noted, absent the consideration of prosecutorial discretion, the two cases would be more easily reconcilable if each had been decided the other way. K. Davis, Administrative Law Treatise §§ 22.02–7, 22.02–10, at 499, 507–08 (Supp.1976).

they have no "judicially cognizable interest" in having the Liquor Code enforced. I would hold that appellees do have standing in this case and would therefore decide their appeal. Consideration of the merits of that appeal, however, leads me to conclude that appellees have failed to sustain their burden of showing, in a mandamus action, that they had a clear right to the remedy requested, because they failed to show that the agency had acted in a manner not authorized by law. I believe that the Liquor Control Board, contrary to the opinion of the Commonwealth Court, has the authority to modify an order, as was done in this case. I would therefore, reverse the order of the Commonwealth Court and enter judgment for appellants.