Erie Human Relations Commission ex rel. Sanford Dunson, Appellant, *v.* Erie Insurance Exchange and H. O. Hirt, Manager, Appellees.

Argued November 8, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Angelo P. Arduini,* Assistant City Solicitor, for appellant.

*William F. Illig,* with him *MacDonald, Illig, Jones & Britton,* for appellees.

OPINION BY JUDGE KRAMER, February 19, 1974:

This is an appeal filed by the Erie Human Relations Commission (Commission) ex rel. Sanford Dunson (Dunson) from an order dated February 20, 1973, of the Court of Common Pleas of Erie County, sustaining the preliminary objections of the Erie Insurance Exchange (Insurance Exchange) and H. O. Hirt (Hirt) (collectively referred to as appellees).

This case had its genesis on June 10, 1971, when Hirt, who is President and Manager of the Insurance Exchange, discharged Dunson from his employment with the Insurance Exchange. The basis for the discharge is not really relevant to our holding in this case, but apparently involved Dunson, a Black man, in "an alleged incident" involving a white female employee of the Insurance Exchange. In any event, on June 14, 1971, Dunson filed a complaint with the Commission alleging discrimination in his discharge. Thereafter the Commission held informal investigatory hearings, and concluded on October 28, 1971 via a letter to appellees that racial discrimination existed in Dunson's discharge. On November 22, 1971, Hirt replied by letter to the

Commission declining to re-employ Dunson. On November 24, 1971, the Commission voted to hold formal public hearings in the matter. On March 6, 1972, hearings were held. The appellees were present and represented by counsel at all of the hearings in this matter. Thereafter, on April 14, 1972, the Commission rendered its adjudication in which it determined that appellees, having discriminated because of race in the discharge of Dunson, were in violation of Ordinance No. 14-1954, as amended. Appellees received notice of the adjudication on April 15, 1972. On October 16, 1972, the City of Erie, through the City Solicitor's Office, filed a complaint in equity in the court below, seeking a mandatory injunction which in effect requested the court to enforce the Commission's order directing appellees to reinstate Dunson in his position of employment and to compensate him for lost pay from June 10, 1971.

The complaint clearly alleges the facts noted above, and pointedly alleges that although the Commission had entered its adjudication, the appellees had not complied with the order of the Commission. It is also quite clear from the presentation to this Court that the appellees took no appeal from the adjudication of the Commission.

The appellees filed preliminary objections in the nature of a demurrer in which generally they contend (1) that the complaint failed to allege racial discrimination; (2) that there was tardiness in the rendering of the adjudication; and (3) that there were deficiencies in the findings insofar as they pertain to the reasons for Dunson's discharge. The court below in sustaining the preliminary objections found, dehors the record, that the Commission had not followed the mandates of the Ordinance, and with the obvious intention of passing upon the merits of the case, determined that the Commission had not properly concluded that there was

racial discrimination in Dunson's discharge. The Commission filed this appeal.

The issue which has been presented to this Court is whether the court below erred in sustaining the preliminary objections to the Commission's complaint seeking enforcement of the Commission's order.

Neither the court below nor any of the parties to this suit have questioned the propriety or the legality of the Ordinance, which is patterned after the Pennsylvania Human Relations Act, Act of October 27, 1955, P. L. 744, as amended, 43 P.S. §951 et seq. The Ordinance contains the usual statement of policy, definitions, unlawful discriminatory practices, and procedures, among which is Section 151.09, entitled "Enforcement," which reads as follows: "(a) On and after September 1, 1963, in the event any person refuses or fails to comply with any cease and desist order issued by the Commission, for a period of ten days from the service of the order by registered mail or personally, the Commission shall certify the case and the entire record of its proceedings to the City Solicitor, who shall invoke the aid of an appropriate court to impose the penalties provided in Section 151.99 and by appropriate action secure enforcement of the order." There is no provision in the Ordinance pertaining to appeals from an adjudication of the Commission. Relying heavily upon the opinion of our Supreme Court in *Philadelphia v. Price*, 419 Pa. 564, 215 A. 2d 661 (1966), it has been contended in this case that silence in the ordinance concerning appellate review dictates a de novo trial before the court, and that where the statute creating the administrative agency does not expressly give a court the power to issue a writ of certiorari, that the court was without authority to review the adjudication. The problem with this contention is that the *Price* opinion was handed down prior to the constitutional amendments of 1968. Article V, Section 9 of the Constitution of 1968 states:

"There shall be a right of appeal in all cases to a court of record from a court not of record; and there shall also be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court, the selection of such court to be as provided by law; and there shall be such other rights of appeal as may be provided by law." As was pointed out by our Supreme Court in the case of *Smethport Area School District v. Bowers,* 440 Pa. 310, 269 A. 2d 712 (1970) : "The new Judiciary Article of the Constitution of Pennsylvania, adopted in 1968, effective January 1, 1969, provides in Section 9 thereof that there shall be a right of appeal 'from an administrative agency to a court of record or to an appellate court.' This introduced a new concept to Pennsylvania jurisprudence, one which recognized the important position of administrative agencies in modern government, the quasi-judicial functions that many of them perform, and the fact that both property rights and personal rights can be seriously affected by their decisions." 440 Pa. at 314, 269 A. 2d at 715. The Court continued: "This section was not, of course, self-executing, and on December 2, 1968, the General Assembly adopted four statutes designed to implement it. They were Acts Nos. 351, 353, 354, and 355. . . . Act No. 353 is entitled 'Local Agency Law' and is altogether new. As stated in the title of the Act, it implements Section 9 of Article V of the Constitution 'by providing for a right of appeal on all cases from adjudications of administrative agencies of a political subdivision; and providing for the practice and procedure before said agency.' " 440 Pa. at 314-315, 269 A. 2d at 715. The Local Agency Law, Act of December 2, 1968, P. L. 1133, 53 P.S. §11301 et seq., specifically provides the procedure to be followed in the rendering of an adjudication by commissions such as the Commission involved in this case, and appeals therefrom. Section 7 of the Local Agency Law, 53 P.S.

§11307 states: "Any person aggrieved by a final adjudication who has a direct interest in such adjudication shall have the right to appeal therefrom. Such appeal, unless otherwise provided by statute authorizing a particular appeal, shall be taken within thirty days to the court of common pleas of any judicial district in which the local agency has jurisdiction."

In view of the facts as established by the record before us, since appellees did not take an appeal from the Commission's adjudication and order of April 14, 1972, their preliminary objections filed in the court below did not raise any questions which would permit the court below to sustain them as a matter of law. Having failed to appeal the Commission's adjudication, appellees must be deemed to have waived their right to seek a review of the Commission's adjudication on the merits. This Court in the recent case of *Hutnik v. Duquesne School District*, 8 Pa. Commonwealth Ct. 387, 302 A. 2d 873 (1973), noted that the Local Agency Law provides an adequate remedy at law precluding an action of mandamus. We reiterate, appellees, having failed to take an appeal as provided in the Local Agency Law, are now precluded from seeking a review of the Commission's adjudication on the merits. The only remaining issues to be decided by the court below involve appellees' reasons for non-compliance with the adjudication from which they took no appeal. For this reason, it was improper for the court below to pass upon the merits of the Commission's adjudication that racial discrimination had been present in Dunson's discharge. Appellees cannot now complain that the adjudication is not supported by the record made before the Commission. The appellees had every opportunity to contest the Commission's findings and conclusions through an appeal to the Court of Common Pleas of Erie County under the Local Agency Law, and this they failed to do.

Based upon the above, we

## ORDER

AND Now, this 19th day of February, 1974, the order dated February 20, 1973, of the Court of Common Pleas of Erie County in the above captioned case is vacated, and it is hereby ordered that the preliminary objections in the nature of a demurrer filed by Erie Insurance Exchange and H. O. Hirt, Manager, are dismissed, and it is further ordered that the said defendants are granted leave to file an answer to the complaint of the Erie Human Relations Commission ex rel. Sanford Dunson within thirty days from the date hereof.