In the Matter of Revocation of Distributor License No. D-3562 Issued to: Elemar, Inc., t/a Thrifty Beverage et al. Elemar, Inc. et al., Appellants.

In the Matter of Revocation of Distributor License No. D-3562 Issued to: Elemar, Inc., t/a Thrifty Beverage et al. Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board et al., Appellants.

Argued December 5, 1978, before President Judge Bowman and Judges Crumlish, Jr., Mencer, Rogers, Blatt, DiSalle and Craig. Judges Wilkinson, Jr. and MacPhail did not participate.

*Rodger L. Mutzel,* with him *Kassab, Cherry, Curran & Archbold,* for Elemar, Inc., Garrett Hill Beverage Co., Inc., Railsplitter, Inc. and General Programming, Inc.

*J. Justin Blewitt,* Deputy Attorney General, with him *W. William Anderson,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for Commonwealth.

*John H. Bream,* with him *Gregory M. Kerwin,* for intervenors.

OPINION BY JUDGE CRAIG, July 27, 1979:

This is an appeal by three distributors (licensees), their managing consulting firm, General Programming, Inc., and the Pennsylvania Liquor Control Board (PLCB) from an order of the Court of Common Pleas of Lancaster County making absolute a rule to show cause why a citation for contempt of court should not be issued against the members of the PLCB. We affirm.

The procedural history of this case is long and complex. On May 8, 1972, the PLCB issued citations against the licensees, charging each of them with having permitted a person who has an interest in another distributor to also have an interest in its business, in violation of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §1-101 et seq.

After a hearing, the PLCB found licensees to be in violation of the Liquor Code because of franchise agreements between each of them and their managing consulting firms. The PLCB suspended licensees' distributor licenses for a period of twenty-one days and thereafter until persons other than the licensees had been divested of all interest in the licensed businesses.

Licensees appealed to the lower court, which, on October 19, 1973, entered an order specifically affirming the PLCB's suspension.[1]

Licensees appealed to this court. On August 19, 1974, while the appeal was still before this court, the PLCB, licensees and their managing consulting firm entered into a stipulation and agreement under which licensees would withraw their appeals to this court and would redraft their management agreements in a manner acceptable to the PLCB. The PLCB agreed "to enter into stipulations remanding the cases presently on appeal to the Court of Common Pleas of Lancaster County and further stipulating that the Court of Common Pleas of Lancaster County remand said cases to the Pennsylvania Liquor Control Board for imposition of penalties under said citations," and that *upon remand to the Pennsylvania Liquor Control Board,* the Pennsylvania Liquor Control Board shall reconsider the disposition of citations heretofore issued." (Emphasis supplied.)

On the same day, by agreement, licensees withdrew the appeals to this court. However, there is no evidence that the lower court approved the stipulation and agreement, or remanded the matter to the PLCB.[2]

---

[1] The lower court's order stated:

AND Now, October 19, 1973 for the foregoing reasons, the order of the Pennsylvania Liquor Control Board of August 25, 1972 suspending the licenses of Elemar, Inc. t/a Thrifty Beverage, Garrett Hill Beverage Co., Inc. t/a Thrifty Beverage, and Railsplitter, Inc. t/a Thrifty Beverage, for twenty-one days and thereafter until persons other than the licensees have been divested of all interests in the licensed premises is sustained, and the appeals in these cases are dismissed.

[2] In fact, in their well-reasoned opinion in the case presently before us, President Judge BROWN and Judge MUELLER emphatically deny that Judge BROWN, who wrote the October 19, 1973 order, ever approved the stipulation, either actually or impliedly.

On December 10, 1974, the Pennsylvania Tavern Association and P.U.B.L.I.C. (associations), both of which are comprised of competing licensed businesses, brought an action in mandamus in this court to compel the PLCB to enforce the suspension orders. While the mandamus action was pending before this court, the PLCB vacated the suspension orders and substituted a fine of $1,000 upon each licensee.

Subsequently this court granted the mandamus relief and ordered the PLCB to reinstate its earlier order. *Pennsylvania Tavern Association v. Pennsylvania Liquor Control Board,* 23 Pa. Commonwealth Ct. 264, 352 A.2d 221 (1976). The Pennsylvania Supreme Court reversed this court at 472 Pa. 567, 372 A.2d 1187 (1977), in which three opinions were filed. Justices O'BRIEN, POMEROY, and NIX joined in a plurality opinion which stated that mandamus was improper because an adequate remedy was available to the associations by way of a petition to the lower court to enforce its own order sustaining the license suspensions. Justice ROBERTS, joined by then Chief Justice JONES, concurred in the reversal, arguing that the associations lacked standing. Justice MANDERINO dissented, arguing that, although the associations had standing, the PLCB had the power to modify its earlier order. Justice EAGEN concurred in the result.

As a result of the Supreme Court's ruling, the associations did in fact petition the lower court to enforce its order, and the lower court issued a rule to show cause why a citation for contempt of court should not be issued against the members of the PLCB, which was made absolute on December 27, 1977, after a hearing. It is from that order that licensees and the PLCB appeal here.

The unique history of this case raises five important questions: (1) Is the order of the lower court, appealed from here, an appealable order? (2) If so, did

the associations have standing to bring their petition in the lower court? (3) If so, did the PLCB have the power to modify the suspension after the lower court had issued its order? (4) If not, can the PLCB raise the defense of sovereign immunity? (5) If the lower court's rule absolute is affirmed, what effect does the withdrawal of licensees' appeal of the PLCB's original suspension order have?

The question of the appealability of a rule absolute to show cause why a citation for contempt of court should not be issued, but before an adjudication of contempt, is a difficult one. The general rule is that there can be no appeal from an interlocutory order in a contempt case. *Commonwealth v. Gaurdiani,* 226 Pa. Superior Ct. 435, 310 A.2d 422 (1973). The Pennsylvania Supreme Court has said that the process necessary to hold one in civil contempt requires several steps—a rule to show cause, answer and hearing, rule absolute, hearing on the contempt citation, and adjudication of contempt. *Commonwealth ex rel. Magaziner v. Magaziner,* 434 Pa. 1, 253 A.2d 263 (1969). In the present case, neither the hearing on nor the adjudication of contempt has yet taken place. Therefore, at first blush, it would appear that the question of contempt is not yet appealable. However, there are exceptions to the general rule. In *United States v. Nixon,* 418 U.S. 683 (1974), the United States Supreme Court stated:

> To require a President of the United States to place himself in the posture of disobeying an order of a court merely to trigger the procedural mechanism for review of the ruling would be unseemly, and would present an unnecessary occasion for constitutional confrontation between two branches of the Government. Similarly, a federal judge should not be placed in the posture of issuing a citation to a President simply in

order to invoke review. . . . These considerations lead us to conclude that the order of the District Court was an appealable order.

418 U.S. at 691-92.

Although *Nixon* may be distinguishable in some respects, its purpose and reasoning are appropriate to the present case. *See Shapp v. Select Committee on State Contract Practices,* No. 1301 C.D. 1974, Commonwealth Court of Pennsylvania (unreported opinion, filed October 11, 1974), in which this court intervened before contempt proceedings resulted in a confrontation of two branches of state government. Therefore, we find that the lower court's order now before us is an appealable order, and we will consider the other questions raised by this appeal.

Licensees and the PLCB also question the associations' standing to have brought the enforcement action in the lower court. To have standing, the associations must be adversely affected by the controversy, which requires a showing of an immediate, direct, and substantial injury. *Concerned Taxpayers v. Commonwealth of Pennsylvania,* 33 Pa. Commonwealth Ct. 518, 382 A.2d 490 (1978). The tests applicable to standing were summarized by our Supreme Court in *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975), where Justice ROBERTS stated:

> Thus, the requirement of a 'substantial' interest simply means that the individual's interest must have substance—there must be some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law. . . .

> The requirement that an interest be 'direct' simply means that the person claiming to be aggrieved must show causation of the harm to his interest by the matter of which he complains.

> . . .

The remaining requirements of the traditional formulation of the standing test are that the interest be 'immediate' and 'not a remote consequence of the judgment.' As in the case of 'substantial' and 'pecuniary', these two requirements reflect a single concern. Here that concern is with the nature of the causal connection between the action complained of and the injury to the person challenging it. (Footnotes omitted.)

464 Pa. at 195, 197, 346 A.2d at 282-84.

We hold that the associations had standing to bring the present action. The associations' injury was immediate, direct and substantial, as defined above. The associations were competitors of licensees, and the licensees' adjudicated violation of the Liquor Code permitted them to engage in unfair competition. Therefore, the associations were entitled to seek the enforcement of the suspensions ordered by the PLCB, and affirmed by the lower court.

In further support of our finding of standing, we look to *Pennsylvania Tavern Association v. Pennsylvania Liquor Control Board,* 472 Pa. 567, 372 A.2d 1187 (1977), a predecessor to this case, involving the identical parties presently before us. Although the plurality opinion of three justices in that case did not explicitly deal with standing, it suggested that the associations have standing, by the following:

In our view, an adequate remedy was available *to the appellees in this action* [Pennsylvania Tavern Association and P.U.B.L.I.C.] by way of a petition to the Lancaster County Court to enforce its order sustaining the license suspension imposed by the Board. (Emphasis supplied.)

472 Pa. at 571, 372 A.2d at 1189.

Justice MANDERINO, in his dissenting opinion, also specifically stated that, in his opinion, the associations had standing.

The third question to be considered is whether the PLCB has the power to modify its suspension after a Court of Common Pleas has entered its own suspension order. As we said in our prior mandamus opinion in this case, referring to the suspension order entered by the lower court:

> This unappealed order of the Court of Common Pleas was clearly a final determination of the matter. The subsequent attempt by the Board to change its position and to vacate the suspension of the licenses issued to the three beer distributors involved here and to modify the penalty to a fine was a complete nullity. We, like the Superior Court in Taylor v. Weinstein, 207 Pa. Superior Ct. 251, 217 A.2d 817 (1966), will not hesitate to declare it so. (Footnote omitted.)

23 Pa. Commonwealth Ct. at 267, 352 A.2d at 222-23.

Although the Supreme Court reversed our finding that mandamus would lie, the above language was not. the basis for the reversal.

The lower court, in its opinion here, carefully considered the question of the PLCB's power to modify its order after the lower court had entered its own order, as the Supreme Court suggested that it do, at note 7 of Pennsylvania Tavern Association, supra. We agree with President Judge BROWN and Judge MUELLER that Taylor v. Weinstein, supra, as well as our prior Pennsylvania Tavern Association case, supra, prevents the PLCB from reconsidering its order under the circumstances of the present case.

The licensees and the PLCB next raise the issue of the PLCB's sovereign immunity as a defense. We find that argument also to be without merit. As our

Supreme Court stated in *Philadelphia Life Insurance Co. v. Commonwealth,* 410 Pa. 571, 190 A.2d 111 (1963):

> Suits which seek to compel *affirmative action on the part of state officials* or *to obtain money damages or to recover property from the Commonwealth* are within the rule of immunity; suits which simply seek *to restrain state officials* from performing affirmative acts are not within the rule of immunity. (Emphasis in original.)

410 Pa. at 576, 190 A.2d at 114.

Moreover, as we said in *Hoyman v. Department of Environmental Resources,* 29 Pa. Commonwealth Ct. 131, 133, 370 A.2d 753, 754 (1977), discussing the enjoining of public officials from acting illegally: "In those cases, because the official conduct is beyond the law, suits against officials *are not* considered suits *against* the Commonwealth." (Emphasis in original.)

Although the present action does not seek injunctive relief, its purpose is clearly to restrain the members of the PLCB from modifying the suspension. Because we have decided that such action is beyond the law, it becomes clear that sovereign immunity is no defense to the present action.[3]

The last question to be answered is the effect of licensees' withdrawal of their appeals from the original order of the lower court affirming PLCB's suspension of the licenses. Licensees argue that they will be deprived of their due process rights by the with-

---

[3] The recent developments in the law of sovereign immunity, specifically *Mayle v. Pennsylvania Department of Highways,* 479 Pa. 384, 388 A.2d 709 (1978), and the Act of September 28, 1978, P.L. 788, Act No. 152-1978 (Act No. 152), now incorporated in The Judicial Code, Title 42 of Pa. C.S., which reenacted the sovereign immunity doctrine, have no effect on our decision. Act 152 does not speak to the present situation, and the pre-Act 152 sovereign immunity did not cover the present action.

drawal of their appeals, in light of the present contempt proceeding, which seeks to compel the PLCB to suspend the licenses of licensees. Although there is a constitutional right of appeal (Pa. Const. art. V, Section 9), such right can be waived. *Erie Human Relations Commission ex rel. Dunson v. Erie Insurance Exchange,* 12 Pa. Commonwealth Ct. 267, 315 A.2d 663 (1974) *aff'd,* 465 Pa. 240, 348 A.2d 742 (1975).

Although the appeals were withdrawn in apparent reliance upon the stipulation and agreement, nothing in that document gave absolute assurance that the cases would be remanded to the PLCB or that the suspensions would be dropped. Therefore, because the withdrawals were at the risk of licensees, they cannot now claim their waiver of appeal rights to be an unconstitutional deprivation.

For the reasons set forth above, we affirm the lower court, and remand this case to the lower court for a hearing on whether or not the members of the PLCB should be adjudged in contempt.

ORDER

AND Now, this 27th day of July, 1979, the above-captioned case is remanded to the Court of Common Pleas of Lancaster County for further proceedings consistent with this opinion.