Pennsylvania Dental Association, Petitioner *v.* Commonwealth of Pennsylvania, Department of Health, Respondent. Pennsylvania Blue Shield, Intervenor.

Pennsylvania Dental Association, Petitioner *v.* Commonwealth of Pennsylvania, Insurance Department, Respondent. Pennsylvania Blue Shield, Intervenor.

Argued December 15, 1981, before President Judge CRUMLISH, JR. and Judges MENCER, ROGERS, WILLIAMS, JR. and CRAIG.

*Thomas A. Beckley,* with him *Jeffrey W. Davis,* of counsel: *Beckley & Madden,* for petitioners.

*D. Galton Cabot Moss,* Assistant Counsel, with him *Christine Dutton,* Assistant Counsel, and *Reed Hamilton,* Chief Counsel, for respondent, Department of Health.

*Elizabeth S. Babbitt,* Assistant Counsel, with her *Anthony A. Geyelin,* Assistant Counsel, for respondent, Insurance Department.

*William E. Miller, Jr.,* with him *Thomas E. Wood* and *William H. Wood,* of counsel, *Keefer, Wood, Allen & Rahal,* for intervenor.

OPINION BY JUDGE MENCER, March 10, 1982:

The Pennsylvania Dental Association (Association) has appealed from the actions of the Pennsylvania Insurance Department and Department of Health which approved a comprehensive dental plan for employees of the United States Steel Corporation (subscribers) submitted by Pennsylvania Blue Shield (Blue Shield). The two appeals have been consolidated for argument. In addition, the Department of Health has filed a motion to quash the appeal from its action.[1] We dismiss the motion to quash and affirm the actions of the Department of Health and the Insurance Department.

Blue Shield proposed a group dental care plan whereby the subscribers would be provided with dental care by dentists who would be paid for their services on a "capitation" basis. Each subscriber would agree to designate a dentist to provide comprehensive services, and this dentist would be paid on the basis of the total number of employees by whom he had been

---

[1] The Insurance Department also filed a motion to quash which was denied by order of this court dated October 14, 1981.

designated, rather than to be paid on the traditional basis of services actually rendered to the individual subscriber. This plan was submitted to the Department of Health and the Insurance Department for approval pursuant to 40 Pa. C. S. §6329.[2] Both agencies approved the plan, and those approvals were appealed to this court pursuant to Section 763(a) of the Judicial Code, *as amended*, 42 Pa. C. S. §763(a). Both appeals allege violations of 40 Pa. C. S. §6324. Also, the Association alleges that the Insurance Department violated 40 Pa. C. S. §6325 and Section 507 of the Administrative Agency Law, 2 Pa. C. S. §507.

## No. 777 C.D. 1981

The Department of Health's motion to quash is based upon a claim that the Association lacks standing to appeal from the Department's action, since it does not have a direct interest in the plan's approval or disapproval. The Association argues, however, that its interest is immediate and substantial because the approved plan will adversely affect many of its members who, it is claimed, would lose patients because they are prevented from participating in the proposed plan.

Judge CRAIG discussed the issue of an association's standing to represent the interests of its members in *Elemar, Inc., Liquor License Case*, 44 Pa. Commonwealth Ct. 515, 521-22, 404 A.2d 734, 738 (1979), in which he wrote:

To have standing, the associations must be adversely affected by the controversy, which requires a showing of an immediate, direct, and substantial injury. Concerned Taxpayers v. Commonwealth of Pennsylvania, 33 Pa. Commonwealth Ct. 518, 382 A.2d 490 (1978). The

---

[2] It has not been argued that Section 6329 does not require the approval of the Insurance Department.

tests applicable to standing were summarized by our Supreme Court in Wm. Penn Parking Garage, Inc. v. City of Pittsburgh, 464 Pa. 168, 346 A.2d 269 (1975), where Justice ROBERTS stated:

'Thus, the requirement of a "substantial" interest simply means that the individual's interest must have substance—there must be some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law....

'The requirement that an interest be "direct" simply means that the person claiming to be aggrieved must show causation of the harm to his interest by the matter of which he complains....

'  ....

'The remaining requirements of the traditional formulation of the standing test are that the interest be "immediate" and "not a remote consequence of the judgment." As in the case of "substantial" and "pecuniary," these two requirements reflect a single concern. Here that concern is with the nature of the causal connection between the action complained of and the injury to the person challenging it.' (Footnotes omitted.)

464 Pa. at 195, 197, 346 A.2d at 282-83. Applying these standards to the case presently before us, we hold that the Association does have standing to challenge the contested action of the Department of Health. Assuming, solely for the purpose of disposing of the standing question, that the Association's allegations of harm to its members are true, then the Association's interest is both direct and immediate. Thus, we turn to the merits of the Association's appeal.

40 Pa. C. S. §6324(a) provides that a health services corporation such as Blue Shield may not exclude any doctor from plan participation without good·cause and· that "[e]very health service doctor practicing within the area covered by any professional health service corporation shall have the right, on complying with such regulations as the corporation may make with the approval of the Department of Health, to register with such corporation." The Association argues that the Blue Shield capitation plan would improperly eliminate certain dentists from participation because it requires that participating doctors be part of a large group practice. We disagree.

The controversy centers on eight provisions contained in Article II of the approved "Primary Dental Office Agreement" which is the preprinted contract to be executed by Blue Shield and the dentists who wish to participate in the plan. These provisions, which are not formal regulations of the department,[3] obligate the participating dentists to provide a certain minimum level of service. The parties have not pointed to any specific provision which could not be fulfilled by a sole practitioner, nor have we found any upon our own analysis.

The Association *has* pointed to a letter written by W.T. Prescott, Jr., Corporate Secretary of Blue Shield, to Richard W. Simpson of the *Insurance Department* on December 4, 1980, which sets forth Mr. Prescott's thoughts on appropriate conditions for participating dentists, but this letter could hardly be described as a regulation of the *Department of Health*, or as a provision of the approved "Primary Dental Office Agreement."

---

[3] These provisions have not been formally adopted as regulations pursuant to Sections 102 and 201 through 208 of the Act of July 31, 1968, *as amended*, known as the Commonwealth Documents Law, 45 P.S. §§1102, 1201-1208.

40 Pa. C. S. §6324(b) provides, in pertinent part, that "no person shall be permitted to interfere with the choice or selection by a patient of his health service doctor after that choice or selection has been made by an adult of sound mind." The Association argues that the Blue Shield capitation plan will interfere with the subscribers' choice of dentists because not all dentists will participate in the plan. Again, we disagree.

As indicated above, the approved plan does not *preclude* any dentist from participating. Also, it does not *mandate* that any subscriber-elect join in the plan. Subscribers are free to continue to receive benefits under eixsting traditional plans which operate on a "payment for services" basis. Therefore, the implementation of the capitation plan will. not improperly interfere in the subscribers' choice of dentists.

For these reasons, the action of the Department of Health in approving the Blue Shield capitation plan is affirmed.

## No. 995 C.D. 1981

The Association's challenge to the action of the Department of Insurance also raises the question of unlawful interference under 40 Pa. C. S. §6324(b). We reject the Association's contentions for the same reason that we rejected them in No. 777 C.D. 1981. The Association has raised two additional arguments with which we will now deal.

First, the Association argues that the contracts approved as part of the capitation program violate 40 Pa. C. S. §6325(d) which prohibits contracts "by or on' behalf of any professional health service corporation [which] provide for any periodic payment or any other payment by that corporation to a subscriber which is not related to the value of the service provided." We reject this argument because the payments envisioned in the plan are related to the value of services to be provided.

Under the capitation plan, each participating dentist will be paid $69 per year per patient, in exchange for which he will provide comprehensive dental care to the subscribers. This amount was determined on the basis of several "actuarial" assumptions concerning the subscribers' needs for services during the year. The intent of the plan is to pay to the dentist an amount of money which will compensate him for the total amount of service provided to a group of subscribers. The only relevant distinction between the proposed capitation plan and the traditional payment plans is that the amount of paperwork should be substantially diminished.

The Association challenges the adequacy of the assumptions upon which the payment rate is based, claiming that the Insurance Department lacks adequate "cost experience" data. We agree that more cost-experience data would be desirable, but this is an experimental plan, so very little data exists. We recognize the need for innovative approaches to health care, however, and we are convinced that, as more cost-experience data is acquired, the plan rates will be adjusted, if necessary, to assure that payments will continue to reflect the total cost of services provided.

Second, the Association argues that the Insurance Department's action in this case was invalid because it violated Section 507 of the Administrative Agency Law which provides that "[a]ll adjudications of a Commonwealth agency shall be in writing, shall contain findings and the reasons for the adjudication, and shall be served upon all parties or their counsel personally, or by mail."

An adjudication is "administrative action which is quasi-judicial in nature, and which determines only the personal or property rights or obligations of the parties before an agency." *Insurance Co. of North America v. Insurance Department*, 15 Pa. Com-

monwealth Ct. 462, 465-66, 327 A.2d 411, 413 (1974). An adjudication is distinct from "the quasi-legislative function an administrative agency performs in promulgating rules or regulations of *general application* to persons throughout the Commonwealth." *Id.* at 466, 327 A.2d at 413 (emphasis in original). The action of the Insurance Department in this proceeding was not quasi-judicial; therefore, it did not result in an adjudication and Section 507 of the Administrative Agency Law is inapplicable.[4]

For these reasons, the action of the Insurance Department in approving the Blue Shield capitation plan is affirmed.

ORDER

AND NOW, this 10th day of March, 1982, the actions of the Pennsylvania Department of Health and the Insurance Department which approved the proposal of Pennsylvania Blue Shield to offer to its subscribers a dental service plan identified as Insurance Department Filing No. 9-W-1980 are hereby affirmed. Motion to quash filed by the Department of Health is dismissed.

Judge PALLADINO did not participate in the decision in this case.

---

[4] The parties have not raised, and we have not considered, the issue of whether the agency action was an invalid quasi-legislative act because of failure to comply with provisions of the Commonwealth Documents Law.